STATE OF CONNECTICUT *v.* CHARLES KLUTTZ
(3208)
(3209)

BORDEN, DALY and BIELUCH, Js.

Argued October 14, 1986—decision released February 17, 1987

*C. Robert Satti, Jr.,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellant-appellee (state).

*Kent Drager,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellee-appellant (defendant).

BORDEN, J. The principal issues of these appeals are (1) whether negligent homicide with a motor vehicle, as defined in General Statutes § 14-222a,[1] is a lesser included offense of misconduct with a motor vehicle, as defined in General Statutes § 53a-57,[2] and (2)

---

[1] General Statutes § 14-222a provides: "Any person who, in consequence of the negligent operation of a motor vehicle, causes the death of another person shall be fined not more than one thousand dollars or imprisoned not more than six months or both."

[2] General Statutes § 53a-57 provides: "(a) A person is guilty of misconduct with a motor vehicle when, with criminal negligence in the operation of a motor vehicle, he causes the death of another person.

"(b) Misconduct with a motor vehicle is a class D felony."

whether a defendant who is convicted of multiple counts of negligent homicide with a motor vehicle, in violation of General Statutes § 14-222a, because of multiple deaths resulting from a single motor vehicle accident, is subject to multiple sentences or to only one sentence on all counts. We hold (1) that negligent homicide with a motor vehicle, in violation of General Statutes § 14-222a, is a lesser included offense of misconduct with a motor vehicle, in violation of General Statutes § 53a-57, and (2) that multiple deaths resulting from a single motor vehicle accident yield a separate sentence on each count pursuant to General Statutes § 14-222a.

On January 19, 1983, at approximately 2:55 p.m., the defendant was operating a tractor-trailer truck on Interstate 95 at the Stratford toll station and caused a motor vehicle accident involving several other vehicles which resulted in the deaths of seven people. The state charged him with seven counts of misconduct with a motor vehicle in violation of General Statutes § 53a-57. The jury acquitted him of the charges of misconduct with a motor vehicle, but convicted him of seven counts of negligent homicide with a motor vehicle in violation of General Statutes § 14-222a as lesser included offenses. The trial court ruled, however, that double jeopardy principles required that only one sentence be imposed and, accordingly, imposed on all seven counts a single sentence of six months incarceration and a fine of $1000.

The defendant appealed from the judgment of conviction, claiming that the court erred (1) in submitting to the jury negligent homicide with a motor vehicle as a lesser included offense of misconduct with a motor vehicle, (2) in admitting into evidence an out-of-court statement of the defendant, (3) in denying the defendant's motion for a mistrial which was based on the assistant state's attorney's allegedly improper com-

ment, made in his final closing argument, concerning the defendant's failure to testify, and (4) in giving confusing and misleading instructions to the jury on the concept of negligence. The state also appealed, with the permission of the trial court, claiming that the court erred in imposing only one sentence on the guilty verdicts of seven counts of negligent homicide with a motor vehicle. We find no error on the defendant's appeal. We find error on the state's appeal.

## I

### THE DEFENDANT'S APPEAL

### A

#### NEGLIGENT HOMICIDE WITH A MOTOR VEHICLE AS A LESSER INCLUDED OFFENSE OF MISCONDUCT WITH A MOTOR VEHICLE

The defendant's principal claim on appeal is that negligent homicide with a motor vehicle, in violation of General Statutes § 14-222a, cannot be a lesser included offense of misconduct with a motor vehicle, in violation of General Statutes § 53a-57, because negligent homicide with a motor vehicle is not a "criminal offense" but is a "motor vehicle violation" pursuant to the definitions set forth in General Statutes § 53a-24.[3] The state advocates the contrary position,

---

[3] General Statutes § 53a-24 provides: "(a) The term 'offense' means any crime or violation which constitutes a breach of any law of this state or of any other state or of federal law or local law or ordinance of a political subdivision of this state, for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, except one that defines a motor vehicle violation or is deemed to be an infraction. The term 'crime' comprises felonies and misdemeanors. Every offense which is not a 'crime' is a 'violation.' Conviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense.

"(b) Notwithstanding the provisions of subsection (a), the provisions of sections 53a-28 to 53a-44, inclusive, shall apply to motor vehicle violations. Said provisions shall apply to convictions under section 21a-278 except that the execution of any mandatory minimum sentence imposed under the provisions of said section may not be suspended."

namely, that negligent homicide with a motor vehicle is a "criminal offense," and not a "motor vehicle violation," because it fails to meet the statutory definition of a "violation" as set forth in General Statutes § 53a-27.[4]

At the state's request and over the objection of the defendant, the court instructed the jury that, if they were not persuaded that the defendant was guilty of misconduct with a motor vehicle, they could convict him of the lesser included offense of negligent homicide with a motor vehicle.[5] Although we agree with the defendant that negligent homicide with a motor vehicle is a "motor vehicle violation" within the meaning of General Statutes § 53a-24 and therefore is not an "offense" or "crime" within the meaning of that statute; see footnote 3, supra; we hold that it is an offense for purposes of the lesser included offense doctrine.

The defendant concedes that, if negligent homicide with a motor vehicle were a "crime" rather than a

[4] General Statutes § 53a-27 provides: "(a) An offense, for which the only sentence authorized is a fine, is a violation unless expressly designated an infraction.

"(b) Every violation defined in this chapter is expressly designated as such. Any offense defined in any other section which is not expressly designated a violation or infraction shall be deemed a violation if, notwithstanding any other express designation, it is within the definition set forth in subsection (a)."

An example of a penal code "violation" is General Statutes § 53a-198, entitled "Failing to identify a comic book publication . . . ."

[5] We reject the state's argument that the defendant did not properly preserve this issue for appeal. The defendant specifically objected to the state's request to give the instruction, took exception when the court indicated that it intended to grant the request, took exception after the instruction was given, and reiterated his claim in argument on his motion for judgment of acquittal after the verdicts. He was not required, as the state suggests, to repeat the claim when the court, in response to specific questions from the jury regarding the meaning of negligence, repeated its instructions on that meaning. Cf. *State* v. *Hilliard,* 3 Conn. App. 339, 341, 488 A.2d 463 (1985) (where court gives correcting charge after proper exception taken, defendant must except to correcting charge in order to challenge it on appeal).

"motor vehicle violation," within the meaning of General Statutes § 53a-24, it would qualify as a lesser included offense of misconduct with a motor vehicle. He does not claim that the first, third or fourth prongs of our traditional lesser included offense analysis were not satisfied. See *State* v. *Tinsley,* 181 Conn. 388, 396–97, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981). His sole claim in this regard is that the second prong of that analysis, namely, that "it is not possible to commit the greater *offense,* in the manner described in the information or bill of particulars, without having first committed the *lesser"*; (emphasis added) id.; cannot be satisfied because negligent homicide with a motor vehicle is, by legislative classification, a "motor vehicle violation" and not an "offense." Therefore, before turning to a discussion of the principal issue of whether negligent homicide with a motor vehicle is a lesser included offense of misconduct with a motor vehicle, we must determine the legislative scope of the terms "offense" and "motor vehicle violation."

General Statutes § 53a-24 (a) defines the term "offense" as "any crime or violation which constitutes a breach of any law . . . for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, *except one that defines a motor vehicle violation* or is deemed to be an infraction.[6] The term 'crime' comprises felonies and misdemeanors. Every offense

___

[6] The penal code was adopted in 1969 and became effective on October 1, 1971. Public Acts 1969, No. 828. The exemption of infractions from the definition of "offense" was added in 1975. Public Acts 1975, No. 75-577, § 8. General Statutes § 51-164m (a) entrusts to the judges of the Superior Court the responsibility of establishing a schedule of fines for infractions, and subsection (d) of that section provides a fine of thirty-five dollars for any infraction not so scheduled. Examples of infractions include improper operation of a bicycle; General Statutes § 14-286; violations of certain local ordinances; General Statutes § 51-164p; and allowing a dog to roam. General Statutes § 22-364.

which is not a 'crime' is a 'violation.' " (Emphasis added; footnote added.) General Statutes § 53a-27 provides that "[a]n *offense,* for which the only sentence authorized is a fine, is a *violation*[7] unless expressly designated an infraction." (Emphasis added; footnote added.) The state contends that negligent homicide with a motor vehicle does not fall within the statutory definition of a "violation" because it carries a penalty of imprisonment. General Statutes § 53a-27. The state further claims that since negligent homicide with a motor vehicle is not a violation, it is a crime within the meaning of General Statutes § 53a-24 (a). Crimes are either felonies or misdemeanors. Id. General Statutes § 53a-26 (a) defines a misdemeanor as "[a]n *offense* for which a person may be sentenced to a term of imprisonment of not more than one year . . . . " (Emphasis added.) General Statutes § 53a-26 (c) further provides that "[a]ny *offense* defined *in any other section* of the general statutes which, by virtue of an expressly specified sentence, is within the definition set forth in subsection (a) shall be deemed an unclassified misdemeanor." (Emphasis added.) Thus, the state argues, negligent homicide with a motor vehicle is an unclassified misdemeanor.

While at first blush the state's argument is attractive, on closer scrutiny it becomes apparent that a basic step has been overlooked in determining the applicability of the statutes cited in support of the analysis. It is clear from the language emphasized in the statutes defining "violation" and "misdemeanor" that, before the definitions apply, the statute violated must be an "offense." It is equally clear, however, that by the express terms of General Statutes § 53a-24 (a) the term "offense" excludes "motor vehicle violation[s]."

---

[7] General Statutes § 53a-24 (a) provides in pertinent part that "[c]onviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense."

Thus, on the basis of the statutory scheme, it is our conclusion that negligent homicide with a motor vehicle is not a "crime" within the meaning of General Statutes § 53a-24 (a) because it is not an "offense," but rather, it is a "motor vehicle violation." This conclusion is buttressed by an examination of the logic and purpose of subsection (b) of General Statutes § 53a-24, and of the legislative history and intent behind the enactment, repeal and reenactment of the statute concerning negligent homicide with a motor vehicle.

First, General Statutes § 53a-24 (b) provides, inter alia, that "[n]otwithstanding the provisions of subsection (a) [which excepts motor vehicle violations from the definition of 'offense'], the provisions of sections 53a-28 to 53a-44, inclusive, shall apply to motor vehicle violations." General Statutes §§ 53a-28 through 53a-44 are the sections of the penal code which, inter alia, set out the authorized sentences for the classified and unclassified offenses (i.e., felonies, misdemeanors and violations) and provide for such sentencing mechanisms as probation, conditional discharge and unconditional discharge. This subsection would be rendered meaningless by the state's analysis, since "motor vehicle violations," within the meaning of General Statutes § 53a-24 (a), could only be transgressions carrying a fine. Yet, the purpose of this subsection is to make clear that "the sentencing principles enumerated in sections 53a-28 to 53a-44, inclusive, shall apply to motor vehicle violations." Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes, p. 8. There would be no purpose served by legislatively authorizing the application of sentencing provisions of the penal code, i.e., suspension of execution of sentences of imprisonment conditioned on terms of probation and conditional discharge, to a "motor vehicle violation" if a "motor vehicle violation" consisted only of statutes authorizing punishment by a

fine.[8] " '[I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . .' *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co., Inc.,* 193 Conn. 208, 231–32, 477 A.2d 988 (1984). . . . 'A legislative act must be read as a whole and "construed to give effect and to harmonize all of its parts." *Eighth Utilities District* v. *Manchester,* 176 Conn. 43, 50, 404 A.2d 898 (1978).' *Finkenstein* v. *Administrator,* 192 Conn. 104, 110, 470 A.2d 1196 (1984)." *Hayes* v. *Smith,* 194 Conn. 52, 58, 480 A.2d 425 (1984).

The legislative history of General Statutes § 14-222a further supports our conclusion that negligent homicide with a motor vehicle is a "motor vehicle violation" and not an "offense" within the meaning of General Statutes § 53a-24. We first note that the degree of negligence prohibited by this statute is equivalent to

---

[8] We recognize that this reasoning is at odds with that of the Appellate Session of the Superior Court in *State* v. *Anonymous (1980–5),* 36 Conn. Sup. 527, 416 A.2d 168 (1980), on which the state relies. The court in that case read the phrase, "motor vehicle violation" to incorporate the definition of "violation," and reasoned that "motor vehicle violation" meant an offense involving the use of a motor vehicle which was punishable only by a fine. Id., 530. We, as a constitutional intermediate appellate court; see *Fishman* v. *Middlesex Mutual Assurance Co.,* 4 Conn. App. 339, 354 n.8, 494 A.2d 606 (1985); are not bound, of course, by the precedent of the statutory Appellate Session of the Superior Court. *State* v. *Hyatt,* 9 Conn. App. 426, 430, 519 A.2d 612 (1987). More importantly, however, we believe that its reasoning unduly disregards the statutory analysis which builds on the term "offense," and unduly disregards the import of General Statutes § 53a-24 (b). We, therefore, decline to follow it.

We also recognize that the commentary to General Statutes § 53a-24 (b) is less than a model of clarity and contributes to the confusion of whether a motor vehicle violation is an "offense." See Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes. The first three sentences of the commentary point toward the conclusion that a motor vehicle violation is not an "offense." The fourth sentence lends some support to the contrary conclusion, namely, that it is an "offense." In this instance, we hesitate to draw any firm inferences as to legislative intent from this Delphic commentary.

the ordinary civil standard of negligence, namely, the failure to use due care. See *State* v. *Russo,* 38 Conn. Sup. 426, 431, 450 A.2d 857 (1982). The state does not contend otherwise, and in this case the jury was so charged by the trial court. Thus, General Statutes § 14-222a proscribes, upon pain of a fine or imprisonment or both, ordinary civil negligence in the operation of a motor vehicle resulting in death. Compare General Statutes § 53a-3 (14) which defines "criminal negligence," for purposes of the penal code, as the failure "to perceive a substantial and unjustifiable risk that [a prescribed result or circumstance] exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

The statute regarding negligent homicide with a motor vehicle was originally enacted in 1941, and was codified with the motor vehicle statutes. General Statutes (Sup. 1941) § 235f. That section was part of title XII, entitled "Motor Vehicles." In 1969, when the penal code was adopted to take effect October 1, 1971, negligent homicide with a motor vehicle was left untouched as then General Statutes (Rev. to 1966) § 14-218. By contrast, the penal code repealed General Statutes (Rev. to 1968) § 53-17, entitled "Misconduct of railroad or railway servants or motor vehicle operators," the substance of which dated from 1917 and which had always been codified with the criminal statutes, and replaced it with General Statutes § 53a-57, entitled "Misconduct with a motor vehicle."

From 1969 to 1971, therefore, misconduct with a motor vehicle, which requires proof of criminal negligence; see General Statutes § 53a-3 (14); was part of the penal code, and negligent homicide with a motor vehicle was located in Chapter 248 of title 14 of the General Statutes, then entitled "Use of the Highway

by Vehicles." See General Statutes § 53a-24 (a). It was within this context that the legislature defined the term "offense," which specifically excluded "a motor vehicle violation."

In 1971, however, the legislature repealed General Statutes § 14-218, negligent homicide with a motor vehicle. The legislative history of this repeal indicates that the 1971 legislature believed that, when the 1969 legislature enacted the penal code, it meant, but inadvertently neglected, to repeal General Statutes § 14-218. See 14 H.R. Proc., Pt. 2, 1971 Sess., pp. 697–98; 14 S. Proc., Pt. 2, 1971 Sess., pp. 712–13. Therefore, from 1971 to 1973 there was no proscription against ordinary civil negligent homicide with a motor vehicle.

In 1973, the statute concerning negligent homicide with a motor vehicle was reenacted; Public Acts 1973, No. 73-639, § 5; as a class B misdemeanor within the penal code. See General Statutes (Rev. to 1975) § 53a-58a. This placement of it within the penal code, however, was something of an anomaly, because penal code offenses generally require a particular criminal mental state, such as intentionally, knowingly, recklessly, or criminal negligence; see General Statutes § 53a-5; all of which are defined in General Statutes § 53a-3. The 1973 penal code offense of negligent homicide with a motor vehicle, then General Statutes § 53a-58a, however, required no particular mental state; it provided only that a "person is guilty of negligent homicide with a motor vehicle when in consequence of the negligent operation of a motor vehicle he causes the death of another person." General Statutes (Rev. to 1975) § 53a-58a (a). Nonetheless, the class B misdemeanor of negligent homicide with a motor vehicle remained in the penal code until 1981.

In 1981, the legislature repealed General Statutes § 53a-58a, the penal code offense of negligent homicide with a motor vehicle, and reenacted it, almost verbatim, as what is now General Statutes § 14-222a. Public Acts 1981, No. 81-26, §§ 1, 2. The stated purpose of the bill which became the public act was "[t]o classify negligent homicide with a motor vehicle as a motor vehicle violation rather than a criminal offense in the penal code." House Bill No. 5079 (1981). The explanation on the floor of the General Assembly by the cochairmen of the judiciary committee focused on several factors. One factor was that the conduct proscribed by the statute involved only ordinary civil negligence, which could be conduct relatively low on the blameworthiness scale, what was referred to as "relatively simple acts of negligence," not involving alcohol; 24 S. Proc., Pt. 3, 1981 Sess., p. 707, remarks of Senator Howard T. Owens, Jr.; and "an act of simple negligence, nothing to do with criminal negligence, nothing to do with intent, nothing to do with drinking . . . ." 24 H.R. Proc., Pt. 3, 1981 Sess., p. 884, remarks of Representative Richard D. Tulisano. Another factor was that criminal statutes should involve some criminal mens rea, and involve blameworthy conduct beyond "simple negligence." Id. A third factor was a perceived constitutional frailty involved in penalizing, as criminal, conduct which did not require a mens rea. Id., 885. A fourth factor was a failure to understand why the statute was transferred from the motor vehicle chapter of the General Statutes to the penal code. Representative Tulisano commented that "at one point it was repealed and they reenacted it. They put it in [the penal code] and that's inexplicable to me." Id. Senator Owens concluded: "[T]his should be classified as a motor vehicle violation and in fact, not a criminal offense and this is the purpose of the statute." 24 S. Proc., Pt. 3, 1981 Sess., p. 708.

From this history, we glean the legislature's rationale for classifying negligent homicide with a motor vehicle as a motor vehicle violation, rather than as a criminal offense. When one drives negligently and causes the death of another, the result is so serious that it calls for severe potential consequences to the wrongdoer, namely, a $1000 fine or six months imprisonment or both. Nonetheless, the kind of wrongful conduct proscribed by the statute can be relatively minor, and the statute does not require any traditonal mens rea. Thus, the person who violates the statute should not be considered as having committed a criminal offense. He could, for example, truthfully answer "No" if asked whether he had ever been convicted of a crime. In this limited sense, therefore, conviction of negligent homicide with a motor vehicle is akin to conviction of a penal code "violation," which "shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense." General Statutes § 53a-24 (a).

Our conclusion that negligent homicide with a motor vehicle as defined in General Statutes § 14-222a is a "motor vehicle violation" and, therefore, not an "offense" for purposes of the penal code[9] does not necessarily mean, as the defendant argues, that it is

---

[9] We do not suggest that a motor vehicle violation cannot be treated as a criminal offense for purposes of the procedures which must be followed for prosecution thereof. Indeed, the Practice Book rules and procedures in criminal cases; Practice Book §§ 592 through 1022; are applicable to motor vehicle violations by virtue of Practice Book § 1021 (5), which specifically defines "offense" to include "traffic offenses." This inclusion, for purposes of procedure, is fully consistent with our traditional allocation of power between the legislative and judicial branches: the legislature defines crimes and the judiciary defines the procedures by which they are prosecuted. *State v. Clemente,* 166 Conn. 501, 353 A.2d 723 (1974). Although the rules of criminal procedure do not specifically state that the requisite burden of proof for a motor vehicle violation is the traditional criminal standard of proof beyond a reasonable doubt, that is implicit in the rules, particularly in the definition of "Trial" as "that judicial proceeding at which the *guilt or innocence* of the defendant to the offense or offenses charged is to be determined." (Emphasis added.) Practice Book § 1021 (11).

not an offense for purposes of the lesser included offense doctrine. That question requires further analysis because, although the term "offense" as used in General Statutes § 53a-24 is a statutory word of art, its function in the jurisprudence of lesser included offenses is quite different. What may or may not be a criminal offense for purposes of a particular statutory categorization[10] is not necessarily determinative of whether it is a criminal offense for purposes of the lesser included offense doctrine. See, e.g., *Illinois* v. *Vitale,* 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980) (traffic violation may be an "offense" for purposes of double jeopardy analysis). Whether the lesser included offense doctrine should apply to include a transgression of the law which the legislature has categorized for certain purposes as noncriminal depends, not on that categorization, but on the functions and purposes of the doctrine itself. We conclude that negligent homicide with a motor vehicle is an offense for purposes of the lesser included offense doctrine.

First, as a matter of precedent, in *State* v. *Hancich,* 200 Conn. 615, 513 A.2d 638 (1986), our Supreme Court strongly suggested that the lesser included offense doctrine applies to motor vehicle violations and infractions. In that case, the defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor, in violation of General Statutes § 14-227a. The trial court denied a request by the defendant for a lesser included offense instruction on the infraction of driving while impaired, in violation of General Statutes § 14-227a (b) and (i), on the ground that the infraction "could not be considered an *offense*

_____

[10] The two cases from other jurisdictions which the defendant has brought to our attention; *Commonwealth* v. *Galvin,* 388 Mass. 326, 446 N.Ed.2d 391 (1983); *Bloomington* v. *Kossow,* 269 Minn. 467, 131 N.W.2d 206 (1964); are not pertinent, because they involve interpretation of statutory language and schemes which are unlike ours.

for purposes of the lesser included offense doctrine." (Emphasis in original.) *State* v. *Hancich,* supra, 619. On appeal, the Supreme Court stated that *"[w]hile we do not agree with the trial court's reasoning,* we believe that its decision may be sustained under our conventional analysis." (Emphasis added.) Id. It then analyzed whether the infraction of driving while impaired was a lesser included offense of driving under the influence, under the traditional lesser included offense rule of *State* v. *Whistnant,* 179 Conn. 576, 427 A.2d 414 (1980), and concluded that under the particular facts of that case it was not a lesser included offense. *State* v. *Hancich,* supra, 621–22.

We read *State* v. *Hancich,* supra, as standing for the proposition that the lesser included offense doctrine applies between motor vehicle violations and infractions, both of which are clearly excepted from the penal code definition of "offense." See footnote 3, supra. Therefore, if the doctrine applies between two offenses as defined by the penal code in General Statutes § 53a-24, and if it applies between two transgressions of the law which are excepted from that definition, such as motor vehicle violations and infractions, we see no reason why it should not also apply between an offense as defined by the penal code and a transgression of the law which is excepted from that definition, such as a motor vehicle violation.

Second, the function and doctrinal roots of lesser included offense analysis lead to the conclusion that the doctrine applies in this case. "The doctrine of lesser included offenses in Connecticut serves the state by precluding acquittal due to failure of proof of the greater crime, the accused by permitting conviction of a lesser crime, and the constitution by preserving the function of the factfinder." *State* v. *MacFarlane,* 188 Conn. 542, 546, 450 A.2d 374 (1982); see also C. Schuman & L. Lager, "Connecticut's Lesser Included Offense Doctrine," 54 Conn. B.J. 313 (1980). A "prin-

cipal function of the lesser included offense doctrine . . . is to '[e]nable the jury to correlate more closely the criminal conviction with the act committed.' " C. Blair, "Constitutional Limitations on the Lesser Included Offense Doctrine," 21 Am. Crim. L. Rev. 445, 448–49 (1984). That process of correlation fits the facts of this case. By focusing on whether the defendant, although innocent of misconduct with a motor vehicle, nonetheless was guilty of negligent homicide with a motor vehicle, the jury was permitted to correlate the convictions with his conduct.

Although it has not been held that a defendant has a constitutional right to a lesser included offense instruction; see *Beck* v. *Alabama,* 447 U.S. 625, 635, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980); *State* v. *Whistnant,* supra, 581; the doctrine's roots grow out of the concept of establishing guilt by proof beyond a reasonable doubt. "[P]roviding the jury with the 'third option' of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard . . . . " *Beck* v. *Alabama,* supra, 633–34. In a case where "one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense"; (emphasis in original) id., 634, quoting *Keeble* v. *United States,* 412 U.S. 205, 212–13, 93 S. Ct. 1993, 36 L. Ed. 2d 844 (1973); the doctrine serves to implement the reasonable doubt standard by relieving the jury, in an appropriate case, of the Hobson's choice between an unjust conviction and a gratuitous acquittal. *Beck* v. *Alabama,* supra. Thus, where as here the charge of negligent homicide with a motor vehicle was required to be proved beyond a reasonable doubt, and where the four traditional requirements of the doctrine were met, the court properly designated negligent homicide with a motor vehicle as a lesser included offense of misconduct with a motor vehicle.

B

## ADMISSION OF OUT-OF-COURT
## STATEMENTS OF DEFENDANT

The defendant next claims that the court erred in admitting certain out-of-court statements of his which were made prior to the accident, because they were hearsay, were self-serving and lacked reliability, and thus did not come within any exception to the hearsay rule.[11] We disagree.

The state presented Trooper Harold Adams of the Virginia state police as a witness. After an examination out of the jury's presence, he testified before the jury that at approximately 11 p.m. on January 18, 1983, which was sixteen hours before the accident, he had a conversation with the defendant on Interstate 95 in Virginia. The defendant was proceeding northbound in the same tractor-trailer that was involved on the same interstate highway in the Connecticut accident. The defendant stated to Adams that he had recently replaced a head on his vehicle's speedometer, and the defendant estimated his speed to Adams in terms, not of miles per hour as would be indicated by the speedometer, but of revolutions per minute as indicated by his tachometer. Thus, the jury could infer that the defendant's speedometer was not working properly. The evidence was relevant to the state's claim that the defendant was traveling too fast at the time of the accident sixteen hours later. The defendant does not question its relevance.

The defendant objected at the examination on the basis, inter alia, that the statement was not against his interest when it was made and was self-serving. The

---

[11] We reject the state's claim that the defendant did not raise this claim with sufficient clarity in the trial court. Our review of the transcript indicates otherwise.

court overruled the objection and the defendant excepted.[12] Thereafter, Adams testified before the jury as recited above.

The defendant's claim is effectively disposed of by *State* v. *Stepney,* 191 Conn. 233, 249–54, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). In that case the Supreme Court recognized that " '[t]he statements made out of court by a [criminal defendant] are universally deemed admissible when offered against him'; 4 Wigmore, Evidence (Chadbourn Rev. 1972) § 1048, p. 2; so long as they are relevant and material to issues in the case. Although the theories for admissibility differ, the vast weight of authority, judicial, legislative, and scholarly, supports the admissibility without restriction of any statement of a party offered against that party at trial." Id., 251.[13]

---

[12] We also reject the state's claim that the defendant did not preserve this issue for appeal by restating his objection when the testimony was repeated, in somewhat abbreviated and refined terms, in the presence of the jury. Although there is prior authority supporting the state's position; see *State* v. *Bell,* 188 Conn. 406, 414, 450 A.2d 356 (1982) (defendant's failure to object to introduction of evidence at trial, where objection and exception voiced during pretrial motion in limine, deprives him of a basis for his claim); the current rules of appellate procedure, effective October 1, 1986, provide as follows: "In jury trials, where there is a motion, argument or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving his objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of [preservation on appeal] without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same." Practice Book § 4185. This procedural rule applies to this appeal. Practice Book § 4189 (formerly § 3166); *State* v. *McIver,* 201 Conn. 559, 568 n.3, 518 A.2d 1368 (1986)

[13] The defendant's suggestion that our civil cases have not yet adopted the rule that a statement of a party-opponent, as distinguished from a declaration against interest, need only be relevant to be admissible, is both beside

The defendant makes an elaborate argument based on the premise that, when deciding whether to admit hearsay evidence, the court must in each instance determine whether the evidence is sufficiently reliable and trustworthy to be admitted. This argument simply misperceives the law. It is true that when hearsay is offered which does not come within any recognized exception to the hearsay rule the court may determine that it should be admitted nonetheless because it carries sufficient indicia of reliability, it is necessary to the case, and admission of it would be in the interest of justice. *State* v. *Sharpe*, 195 Conn. 651, 664, 491 A.2d 345 (1985); *In re Jason S.*, 9 Conn. App. 98, 105, 516 A.2d 352 (1986). It is also true, however, that "[s]ome types of admissible hearsay occur frequently enough that certain defined exceptions to the general rule of inadmissibility have come to be recognized." *State* v. *Stepney*, supra, 250. The out-of-court statements of a criminal defendant constitute one such exception. Id., 250–52. The statements of the defendant in this case fall squarely within that exception, and were thus admissible without any further reference to whether they were self-serving or reliable.

## C

### THE ARGUMENT OF THE STATE IN FINAL CLOSING ARGUMENT

The defendant next claims that the court erred in denying his motion for a mistrial which was based on

the point and probably incorrect. It is beside the point because this is a criminal case and *Stepney* is dispositive. *State* v. *Stepney*, 191 Conn. 233, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). It is probably incorrect because the court in *Stepney* recognized that the language of the two prior civil cases which confused the two hearsay exceptions, namely, statements of a party-opponent and declarations against interest, was unsupported dictum. See id., 252–53 n.15. For a thorough and clear analysis of the difference between the requirements of the two hearsay exceptions, see C. Tait & J. LaPlante, Connecticut Evidence (1985 Sup.) §§ 11.5 and 11.6.

the state's final closing argument. He claims that the argument was an improper indirect comment on his failure to testify and that a mistrial was required. We disagree.

In final closing argument; see Practice Book § 874 (4); after the defendant had presented his final argument, the assistant state's attorney stated the following: "I say to you ladies and gentlemen the State has proven to you beyond a reasonable doubt that not only was Charles Kluttz negligent on that day and *without a reasonable explanation to show you that he was innocent,* but he was criminally negligent and his criminal negligence in the operation of the [truck] with the trailer attached caused the deaths of seven people. . . . " (Emphasis added.) Court was adjourned for the day immediately thereafter. The next morning the defendant moved for a mistrial, claiming that the emphasized portion of the argument amounted to improper comment on his failure to testify. The court denied the motion.

The ultimate question on a motion for mistrial is whether there was " 'substantial and irreparable prejudice to the defendant's case.' Practice Book § 887. A mistrial is warranted 'only where it is apparent to the court that as a result of some occurrence during trial a party has been deprived of the opportunity for a fair trial.' " *State* v. *Jennings,* 5 Conn. App. 500, 505, 500 A.2d 571 (1985). Such a motion invokes the court's wide discretion. Id.

The constitutional prohibition against indirect comment on the defendant's failure to testify "does not mean, however, that the state is precluded in argument from commenting on the strength of its case or the weakness of the defense case. *State* v. *Magnotti,* [198 Conn. 209, 220, 502 A.2d 404 (1985)]; see *United States ex rel. Leak* v. *Follette,* 418 F.2d 1266, 1268–69 (2d Cir.

1969), cert. denied, 397 U.S. 1050, 90 S. Ct. 1388, 25 L. Ed. 2d 665 (1970). 'The prosecutor is entitled to comment on a defendant's failure to call witnesses to contradict the factual character of the government's case, *United States* v. *Dioguardi,* 492 F.2d 70, 81–82 (2d Cir.), cert. denied, 419 U.S. 873 [95 S. Ct. 134, 42 L. Ed. 2d 112] (1974), as well as his failure to support his own factual theories with witnesses. *United States* v. *Rodriguez,* 556 F.2d 638, 641 (2d Cir. 1977); *United States* v. *Lipton,* 467 F.2d 1161, 1168 (2d Cir. 1972), cert. denied, 410 U.S. 927 [93 S. Ct. 1358, 35 L. Ed. 2d 587] (1973).' *United States* v. *Bubar,* 567 F.2d 192, 199 (2d Cir.), cert. denied, 434 U.S. 872, 98 S. Ct. 217, 54 L. Ed. 2d 151 (1977). The ultimate test of whether a prosecution argument indirectly and impermissibly comments on the defendant's failure to testify is whether, because of its language and context, the jury would naturally and necessarily interpret it as comment on the defendant's failure to testify. *State* v. *Magnotti,* supra, 216; *State* v. *DeMartino,* [7 Conn. App. 292, 294–95, 508 A.2d 809 (1986)]. A significant factor in applying this test is whether the argument calls for information or explanations which only the defendant could be expected to supply. See *United States ex rel. Leak* v. *Follette,* supra; *State* v. *DeMartino,* supra, 295." *State* v. *Allen,* 9 Conn. App. 169, 178–79, 517 A.2d 1043 (1986). The argument of the assistant state's attorney did not fail that test.

A careful reading of the challenged language in its context yields the conclusion that it referred solely to the strength of the state's case, and not to the failure of the defendant to testify. In proving guilt beyond a reasonable doubt, the state must produce proof which precludes every reasonable hypothesis of innocence, is consistent with guilt and is inconsistent with any other rational conclusion. *State* v. *Dumlao,* 3 Conn. App. 607, 616, 491 A.2d 404 (1985). The challenged language

came at the very end of the state's final closing argument. We read it, and we believe that the jury heard it, as argument that the state had proven beyond a reasonable doubt four facts: (1) the defendant was negligent; (2) there was no reasonable explanation of the evidence leading to a conclusion of innocence; (3) he was not only negligent but was *criminally* negligent; and (4) his criminal negligence caused the deaths of seven persons. Thus, the state was, we believe, merely arguing that it had met its burden of precluding every reasonable hypothesis of innocence.

Furthermore, even if we assume, as the defendant argues, that the challenged language asked the jury to seek a reasonable explanation of innocence from the defendant, taken in context it was not improper. There was evidence, introduced through the defendant's doctor and a hospital social worker, that he suffered from retrograde amnesia, that he did not remember the accident, but that he did remember trying to use his brakes.

The challenged language was in response to statements made by defense counsel in his closing argument. He had argued that there were reasonable explanations for the accident which were consistent with the defendant's innocence. These arguments referred to the defendant's amnesia, and counsel further argued that it was reasonable to infer that the defendant's brakes had unexpectedly and suddenly failed, that he downshifted gears in an attempt to slow his tractor-trailer as he approached the toll station, and that he applied his emergency brake, which explained certain skid marks on the road. In sum, his argument was that it was a reasonable explanation from the evidence that the accident was caused, not by the defendant's negligence, but by mechanical failure which was beyond his control.

The state, in its final closing argument, rebutted each of these claims made by the defendant's counsel. The state argued that the defendant failed to produce evidence that his brakes were malfunctioning, whereas the state had produced evidence that they were in fact working. The state argued further that there was no evidence presented to support the defendant's claim that he downshifted his gears or applied the emergency brake. It was within this context that the assistant state's attorney argued that the defendant was "without a reasonable explanation."

The state was entitled to comment on the weakness of the defendant's case and his failure to support his own factual theories. *State* v. *Allen,* supra. This is especially true where the defendant has provided the jury with a reason for his failure to explain the events leading up to the accident, namely, that he suffered amnesia. The defendant's case necessarily would require persons other than the defendant to supply information or explanations; *State* v. *Allen,* supra; as to what occurred. The failure of the defendant to call expert or lay witnesses in support of his theory is a legitimate area of comment. Where the defendant presented the jury with an explanation for his failure to explain the events surrounding the accident, and where that explanation was unrelated to the defendant's constitutional right not to testify, we cannot conclude that the jury naturally and necessarily interpreted the state's argument as a comment on his failure to testify. Id.

## D

### JURY INSTRUCTION ON NEGLIGENCE

The defendant's fourth claim of error requires little discussion. In explaining the concepts of negligence and criminal negligence to the jury, the court a number of times used the term "simple negligence." The defendant timely excepted to the charge.

The defendant argues that the term "simple negligence" was confusing and misleading to the jury because the word "simple" has several commonly understood meanings, such as "easy," "mere," "easy to understand" and "not complicated," which are inapplicable to the case. We disagree.

It is clear from reading the entire charge, as we must; *State* v. *Wright,* 9 Conn. App. 275, 279, 518 A.2d 658 (1986); that the court used the term "simple negligence" solely as a label for the concept of negligence involving breach of a duty, either the common law duty of reasonable care or the breach of a statutory duty. This was a case involving thirteen days of trial, thirty-five witnesses, over 100 full exhibits, much circumstantial evidence as to the cause of the accident which resulted in seven deaths, and yielding over 1700 pages of transcript. It stretches the imagination beyond the breaking point that the jury was misled by this term, which the court clearly used as a label for a thoroughly explained concept, into thinking that their function was reduced to anything easy, mere or uncomplicated. The defendant's claim is a classic case of hypertechnical dissection of the charge, which we do not countenance. *State* v. *Webb,* 8 Conn. App. 620, 630, 514 A.2d 345 (1986).

## II

### THE STATE'S APPEAL

The state challenges the trial court's ruling that double jeopardy principles prevent imposing more than one sentence upon the defendant after his conviction on seven counts involving the deaths of seven persons. We agree with the state, and remand the case for imposition of new sentences.

We first consider the defendant's argument that this appeal is moot because the court, in imposing the sentence, stated that even if it had determined that it was

permitted to impose multiple sentences it would have imposed the same total effective sentence, namely, incarceration for six months and a total fine of $1000. The defendant argues from this that the state's appeal is moot because no practical relief can flow even if its appeal is successful. *Doyon* v. *South Windsor,* 1 Conn. App. 417, 419, 472 A.2d 361, cert. denied, 193 Conn. 801, 474 A2d 1259 (1984). We disagree.

It is well established that, from a defendant's standpoint, multiple convictions yielding concurrent sentences do not result in mootness, because they also yield significant collateral consequences beyond the time spent in incarceration. *Barlow* v. *Lopes,* 201 Conn. 103, 112, 513 A.2d 132 (1986). The state's interests in securing convictions of the guilty also go beyond the factors of incarceration and a fine. They include the vindication of the law which has been violated; see *State* v. *Hansen,* 8 Conn. App. 26, 29, 510 A.2d 465 (1986); and the sense of redress for the victims of that violation. See, e.g., Practice Book § 919 (2) and General Statutes § 54-91c (b), which give victims the right to address the court upon the imposition of sentence. Furthermore, we believe that just as the defendant is entitled to appeal in order to shed himself of improper collateral consequences of a conviction, the state is entitled to appeal where appropriate in order to impose proper collateral consequences. We therefore turn to the merits of the appeal.

Prior to trial, the defendant filed a "Motion for Ruling Re: The Court's Power To Sentence Consecutively," in which he requested the court to rule "[w]hether double jeopardy permits more than one sentence for Misconduct with a Motor Vehicle in this case and, if so, whether the sentences can be consecutive or must be concurrent?" The court ruled that double jeopardy principles required that a violation of General Statutes § 53a-57 resulting in the death of multiple vic-

tims constitutes a single violation of the statute and, in a further articulation of its decision, that in the event of a conviction there will be but one sentence.[14] After the trial, the court maintained this view as applied to his conviction under General Statutes § 14-222a and imposed a single sentence.

The trial court's ruling, and the state's claim of error, implicate "the protection afforded by . . . [the double jeopardy] provision against multiple punishments for the same offense. *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). 'With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.' *Missouri* v. *Hunter,* 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d (1983). . . . [T]he issue, though essentially constitutional, becomes one of statutory construction." *State* v. *Madera,* 198 Conn. 92, 109, 503 A.2d 136 (1985). Our inquiry, "when a defendant is convicted of multiple violations of the *same* statutory provision is whether the legislature intended to punish the individual acts separately or to punish only the course of action which they

---

[14] We need not discuss at length the competing claims of the parties concerning two earlier, pretrial rulings by the court, *Reilly, J.,* on a motion to dismiss or consolidate filed by the defendant, and on an earlier "Motion Re: Ruling," filed by the defendant which was worded identically to the motion acted on by the judge who presided at the trial, *Bingham, J.* Judge Reilly denied both of the earlier motions. Suffice it to say that our review of the trial court record discloses that the parties did not understand Judge Reilly's decisions to determine conclusively, for purposes of the case, whether multiple punishments could be imposed in the event of multiple convictions, as opposed to whether there could be multiple counts of prosecution. In tackling head-on the thorny issue of multiple sentences when it was presented, Judge Bingham did not violate the "flexible principle" of the law of the case; *Breen* v. *Phelps,* 186 Conn. 86, 99, 439 A.2d 1066 (1982); or the more limited stricture of *State* v. *Deep,* 181 Conn. 284, 286, 435 A.2d 333 (1980), on which the state relies, but which was subsequently limited to reconsideration of the propriety of a grand jury charge. See *Breen* v. *Phelps,* supra, 100–101.

constitute. *Albernaz* v. *United States,* 450 U.S. 333, 337, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981); *Whalen* v. *United States,* 445 U.S. 684, 691, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980)." (Emphasis in original.) *State* v. *Rawls,* 198 Conn. 111, 121, 502 A.2d 374 (1985). We conclude, on the basis of the statutory language of negligent homicide with a motor vehicle, that the legislative intent was to punish the individual acts separately. Therefore, there may be as many violations of the statute as there are victims.

General Statutes § 14-222a provides for imprisonment or a fine or both for "[a]ny person who, in consequence of the negligent operation of a motor vehicle, causes the death of *another person* . . . ." (Emphasis added.) For purposes of double jeopardy analysis, this language falls squarely within the rule of *State* v. *Couture,* 194 Conn. 530, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). In that case, our Supreme Court held that the trial court did not err in sentencing the defendant, who had been convicted of three counts of felony murder arising out of the same course of action, to three consecutive terms of imprisonment based on the fact that there were three victims. The court stated: "The statute refers to the death of '[another] person' in the singular. A fundamental purpose of the criminal law is to protect individual citizens from the criminal conduct of another. People are neither fungible nor amorphous. Where crimes against persons are involved, a separate interest of society has been invaded for each violation. Therefore, when two or more persons are the victims of a single episode there are as many offenses as there are victims." Id., 565–66; see also *State* v. *Madera,* supra, 109–10.

The defendant argues that the reasoning underlying the *Couture* decision, namely, to protect "citizens from the criminal conduct of another"; *State* v. *Couture,*

supra; does not apply to this motor vehicle violation. We disagree. Even though negligent homicide with a motor vehicle is not a "crime"; see Part A of this opinion; it is nonetheless a transgression of a very serious nature, imposing punishment for wrongful conduct resulting in the loss of human life. We conclude, on the basis of the language of the statute, that it predicates guilt upon the combination of the conduct which causes a motor vehicle accident and the fatal consequence of that accident. See *State* v. *Russo,* 38 Conn. Sup. 426, 430, 450 A.2d 857 (1982).

The repeal of the penal code version of negligent homicide with a motor vehicle and its reenactment as a motor vehicle violation does not change this result. The legislative history makes clear that with the movement of the statute to title 14, "[t]he penalties do not change. Nothing changes in the existing law . . . The penalties remain the same . . . ." 24 H.R. Proc., Pt. 3, 1981 Sess., p. 885, remarks of Representative Richard D. Tulisano. We conclude, therefore, that by proscribing conduct which leads to the death of "another person," the legislature intended to punish the "individual acts" of causing death separately rather than "the course of action which they constitute." *State* v. *Rawls,* supra, 121.

The conclusion that a vehicular homicide resulting in multiple deaths yields multiple sentences is in accord with the great weight of authority in other jurisdictions. See, e.g., *State* v. *Miranda,* 3 Ariz. App. 550, 557–58, 416 P.2d 444 (1966); *McHugh* v. *State,* 160 Fla. 823, 824, 36 So. 2d 786 (1948), cert. denied, 336 U.S. 918, 69 S. Ct. 640, 93 L. Ed. 1081 (1949); *State* v. *Lowe,* 130 So. 2d 288, 289 (Fla. App. 1961); *People* v. *Allen,* 368 Ill. 368, 379, 14 N.E.2d 397 (1937), appeal dismissed, 308 U.S. 511, 60 S. Ct. 132, 84 L. Ed. 436 (1939); *State* v. *McFadden,* 320 N.W.2d 608, 618 (Iowa 1982); *Fleming* v. *Commonwealth,* 284 Ky. 209, 210–11,

144 S.W. 2d 220 (1940); *Commonwealth* v. *Meehan*, 14 Mass. App. 1028, 1029, 442 N.E.2d 43 (1982); *Burton* v. *State*, 226 Miss. 31, 46, 79 So. 2d 242 (1955); *State* v. *Whitley*, 382 S.W.2d 665, 667 (Mo. 1964); *Jeppesen* v. *State*, 154 Neb. 765, 768–69, 49 N.W.2d 611 (1951); *State* v. *Martin*, 154 Ohio St. 539, 541–42, 96 N.E.2d 776 (1951); *Fay* v. *State*, 62 Okl. Crim. App. 350, 357, 71 P.2d 768 (1937); *State* v. *Irvin*, 603 S.W.2d 121, 123–24 (Tenn. 1980); *State* v. *Rabe*, 96 Wis. 2d 48, 72–76, 291 N.W. 2d 809 (1980); see also 7A Am. Jur. 2d, Automobiles and Highway Traffic § 391; but see, e.g., *Ex Parte Rathmell*, 664 S.W.2d 386 (Tex. App. 1983).

The defendant also argues that the rule of lenity should be applied when construing General Statutes § 14-222a because the statutory definition of "person" is ambiguous. He points out that under the penal code, "person" is defined as "a human being"; General Statutes § 53a-3 (1); whereas General Statutes § 14-212 (1) defines "person," for purposes of General Statutes § 14-222a, by reference to General Statutes § 14-1 (41). That statute, in turn, defines "person" to include "any *individual,* corporation, association, copartnership, company, firm *or other aggregation of individuals* . . . . " (Emphasis added.) From this he argues that General Statutes § 14-222a is not *clearly* aimed at the protection of individual lives from negligent vehicular operation but is ambiguous. Therefore, he claims, the rule of lenity, as articulated in *State* v. *Rawls,* supra, requires that "the issue should be resolved in favor of lenity and against turning a single transaction into multiple offenses." Id., 122. We reject this argument because the statutory definition on which the defendant relies was not in effect at the time of the defendant's conduct in this case. The statutory reference, in General Statutes § 14-212, to the definitions contained in General Statutes § 14-1, was not present in 1983,

when the accident in this case occurred. General Statutes (Rev. to 1983) § 14-212 did not define "person" at all. It was not until 1984 that the legislature incorporated into General Statutes § 14-212 the definitions contained in General Statutes § 14-1.[15]

---

[15] We note, moreover, that even under the defendant's analysis the requisite ambiguity would be lacking. "The 'touchstone' of the rule of lenity is 'statutory ambiguity.' " *State* v. *Madera,* 198 Conn. 92, 122, 503 A.2d 136 (1985), quoting *Bifulco* v. *United States,* 447 U.S. 381, 387, 100 S. Ct. 2247, 65 L. Ed. 2d 205 (1980). "Lenity thus serves only as an aid for resolving an ambiguity; it is not meant to be used to beget one. The rule comes into operation 'at the end of the process of construing what [the legislature] has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers.' *Callanan* v. *United States,* [364 U.S. 587, 596, 81 S. Ct. 321, 5 L. Ed. 2d 312, reh. denied, 365 U.S. 825, 81 S. Ct. 687, 5 L. Ed. 2d 703 (1961)]." *Albernaz* v. *United States,* 450 U.S. 333, 342, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981).

The title 14 definition of a "person" as "any individual" is no less singular in its connotation than the Penal Code definition of a "person" as "a human being." *State* v. *Couture,* 194 Conn. 530, 482 A.2d 300 (1984), cert. denied, 409 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). Nor does that part of General Statutes § 14-1 (41) which defines a "person" as any "other aggregation of individuals" lend support to the proposition that the statute is ambiguous as to whether convictions can be had for each individual death.

General Statutes § 14-212 provides that "[t]erms used in this chapter shall be construed as follows, unless another construction is clearly apparent from the language or context in which the term is used or unless the construction is inconsistent with the manifest intention of the general assembly . . . . " In determining the meaning of the phrase "other aggregation of individuals," we are mindful of the rule of ejusdem generis "which explains that 'where a particular enumeration is followed by general descriptive words, the latter will be understood as limited in their scope to . . . things of the same general kind or character as those specified in the particular enumerations.' *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289, 296, 82 A. 561 [1912]." *Eastern Connecticut Cable Television, Inc.* v. *Montville,* 180 Conn. 409, 413, 429 A.2d 905 (1980). Accordingly, the phrase "other aggregation of individuals" must be construed in light of the immediately preceding enumeration which includes corporations, associations, copartnerships, companies and firms. We conclude that the phrase "other aggregation of individuals" refers, not to the victims of vehicular negligence but, from the context; General Statutes § 14-212; to businesses or officially recognized entities.

We also note that, unlike the present case, *Rawls*, which was a drug possession case, did not involve harm to or the death of a person. Generally, crimes against the person are more likely to be read as yielding multiple sentences than are property crimes. See, e.g., *State* v. *Rabe*, supra.

There is no error on the defendant's appeal. There is error on the state's appeal, the judgment is set aside and the case is remanded to the trial court for resentencing in accordance with this opinion.

In this opinion DALY, J., concurred.

BIELUCH, J., concurring. I concur in the results of the majority opinion, but disagree with the conclusion that General Statutes § 14-222a does not proscribe a criminal offense within the meaning of General Statutes § 53a-24 (a), and with the refusal to invoke the precedent established in *State* v. *Anonymous (1980-5)*, 36 Conn. Sup. 527, 416 A.2d 168 (1980).

General Statutes § 14-222a had its legislative origin in Public Acts 1941, Chapter 118. It was codified as a portion of title XII, chapter 82, part IV, governing the operation of motor vehicles. General Statutes (Sup. 1941) § 235f. Negligent homicide with a motor vehicle, on its enactment, provided for a maximum penalty of a fine of $250 or thirty days imprisonment, or both. In the 1949 revision of the General Statutes, this law was recodified with the motor vehicle statutes as § 2415. The maximum penalty was thereafter increased to a fine of $500 or six months imprisonment, or both. Public Acts 1949, No. 131. Such was its form when the penal code was adopted in 1969, and became effective on October 1, 1971. See Public Acts 1969, No. 828, § 215.

General Statutes § 53a-24 of the penal code is the definitional provision under review. It provides: "(a)

The term 'offense' means any crime or violation which constitutes a breach of any law of this state or of any other state or of federal law or local law or ordinance of a political subdivision of this state, for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, except one that defines a motor vehicle violation or is deemed to be an infraction. The term 'crime' comprises felonies and misdemeanors. Every offense which is not a 'crime' is a 'violation.' Conviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense. (b) Notwithstanding the provisions of subsection (a), the provisions of sections 53a-28 to 53a-44, inclusive, shall apply to motor vehicle violations. Said provisions shall apply to convictions under section 21a-278 except that the execution of any mandatory minimum sentence imposed under the provisions of said section may not be suspended."

The penal code was the product of extensive and intensive research and study by a commission appointed to revise and codify the criminal statutes of the state. 31 Spec. Acts 348, No. 351; 32 Spec. Acts 323, No. 314. The codification and application of the penal code consisted of two steps, its original enactment in 1969 and the initial amendments adopted in 1971 prior to its effective date. Its final publication in 1971 was accompanied by comments of the commission "to indicate the rationale, background and source of the various portions of the Code, as an aid to interpretation thereof." Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes, p.1. The commission's comments to § 53a-24 are relevant and illuminating in our inquiry.[1] With reference to sub-

---

[1] It is well settled that the report and commentary of a commission on a revision of statutory law provides evidence of legislative intent. *State* v. *Rastopsoff,* 659 P.2d 630, 639–40 (Alaska App. 1983); 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 48.09, p. 316.

section (a), the commission stated, in part: "This section defines the terms 'offense,' 'crime,' and 'violation.' 'Offense' is a general term which means a breach of state or local 'criminal' law—i.e., one that calls for imprisonment or fine for breach thereof. 'Crime' means either a felony or misdemeanor. 'Violation,' which must be read in connection with section 53a-27, means an offense calling only for a fine for breach thereof. The concept of a 'violation,' which is taken from the Model Penal Code, is new. . . . It is a new category of noncriminal offense . . . ." Id., p. 7.

The Model Penal Code defines a violation in § 1.04 (5) in these terms: "An offense defined by this Code or by any other statute of this State constitutes a violation if it is so designated in this Code or in the law defining the offense or if no other sentence than a fine, or fine and forfeiture or other civil penalty is authorized upon conviction or if it is defined by a statute other than this Code that now provides that the offense shall not constitute a crime. A violation does not constitute a crime and conviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense."

It is clear that a distinction must be made between the statutory categorization or classification of a transgression of the law as a "violation," and the general definition of any transgression of the law as a "violation of that law." The majority opinion has failed to make this refinement of the two uses of the word "violation." In the context of a criminal prosecution, by definition, the accused is always charged with the "violation of a law." The same holds true in the prosecution under motor vehicle statutes; by definition, the defendant is charged with the "violation of a motor vehicle law." In either case, the categorization or classification of the breach of any law, penal or motor vehicle, as a "violation" is determined by the maximum penalty autho-

rized by the legislature, i.e., the imposition of a fine only. See General Statutes § 53a-27. A permissible imposition "of a sentence to a term of imprisonment or to a fine, or both . . . " classifies the "violation of the law" as a "crime." General Statutes § 53a-24 (a).

This analysis of § 53a-24 (a) is confirmed by the commission's comments to subsection (b), which provided: "The definition of 'offense' in subsection (a) makes clear that it does not include motor vehicle infractions. The purpose of this provision is to except from the operation of the Code, except as provided in subsection (b), motor vehicle infractions. Subsection (b), however, provides that the sentencing principles enumerated in sections 53a-28 to 53a-44, inclusive, should apply to motor vehicle violations. *Thus, a motor vehicle violator would have the limits of his sentence determined by the motor vehicle section, since his 'offense' would be an 'unclassified misdemeanor' within the meaning of section 53a-26 (c); but he would be sentenced under the principles and procedures of sections 53a-28 to 53a-44.*" (Emphasis added.) Commission to Revise the Criminal Statutes, supra, p. 8.

Continuing the definitive analysis of the penal code, General Statutes § 53a-26, cited by the commission in its comment to § 53a-24 (b), establishes the following: "(a) An offense for which a person may be sentenced to a term of imprisonment of not more than one year is a misdemeanor. (b) Misdemeanors are classified for the purpose of sentence as follows: (1) Class A, (2) class B, (3) class C and (4) unclassified. (c) The particular classification of each misdemeanor defined in this chapter is expressly designated in the section defining it. *Any offense defined in any other section of the general statutes which, by virtue of an expressly specified sentence, is within the definition set forth in subsection (a) shall be deemed an unclassified misdemeanor.*" (Emphasis added.)

The commission's explanation of this provision provided: "This section continues the traditional definition of a misdemeanor as an offense carrying a potential penalty of not more than one year. It provides for four categories of misdemeanors: A, B, C and unclassified. Sections 53a-36 and 53a-42 give the authorized penalties therefor. The concept of 'unclassified misdemeanor' is analogous to the 'unclassified felony' explained immediately above." Commission to Revise the Criminal Statutes, supra, p. 8.

Relating back to the commission's reference to its explanation of an "unclassified felony," I find the following analysis in its comment to General Statutes § 53a-25: "The concept of an 'unclassified felony' like that of 'unclassified misdemeanor' referred to in section 53a-26, is meant to refer to the virtually hundreds of criminal offenses which will continue to exist outside the Code but which will be subject to sections 53a-28 to 53a-47 for sentencing." Id.

The classification of a transgression of the law as a "violation" in § 53a-24 of the penal code is further specifically defined in § 53a-27 thereof as follows: "(a) An offense, for which the only sentence authorized is a fine, is a violation unless expressly designated an infraction. (b) Every violation defined in this chapter is expressly designated as such. Any offense defined in any other section which is not expressly designated a violation or infraction shall be deemed a violation if, notwithstanding any other express designation, it is within the definition set forth in subsection (a)."

At the time of the adoption of the penal code in 1969, negligent homicide with a motor vehicle, then codified as § 14-218 of the motor vehicle laws, was manifestly a misdemeanor providing for a fine of $500 or imprisonment of six months, or both. By virtue of the classification of misdemeanors in § 53a-25, it thereafter became an "unclassified misdemeanor."

The penal code was enacted in 1969, to become effective on October 1, 1971. Public Acts 1969, No. 828, § 215. In its session of 1971, the legislature undertook to refine this pending general revision of the criminal laws by adopting legislation deemed necessary or desirable to implement before its effective date. One such measure was the repeal of General Statutes (Rev. to 1966) § 14-218, the motor vehicle negligent homicide law; Public Acts 1971, No. 30; but this was done through a misunderstanding of the scope of § 53a-57 of the penal code, entitled, "Misconduct with a motor vehicle: class D felony."

House Bill No. 7660, Session of 1971, entitled, "An Act Concerning the Extension of Negligent Homicide to Private Parking Areas" was introduced in the legislature for its stated purpose. Thereafter, a substitute bill was approved favorably by the joint standing committee on the judiciary. The substitute bill, repealing § 14-218, was approved by the General Assembly. Public Acts 1971, No. 30. At the debate on this measure, the House chairman of the judiciary committee supported passage with this explanation: "The bill, as submitted, was entitled An Act Concerning the Extension of Negligent Homicide to Private Parking Areas, and it amended Sec. 14-218. The committee considered the proposition and felt that it was a good proposition to be passed. Upon further investigation with the Legislative Commissioner's office we found that Section 53a-57 of the Criminal Code will go into effect October 1st. That is entitled Misconduct With a Motor Vehicle and really is a new negligent homicide statute, which statute is broad enough to include private parking areas. Upon further investigation we found that Section 14-218 had not been repealed and would thus have caused a conflict with the new [section] 53a-57. As a result, the bill before us repeals [section] 14-218 so as to avoid such conflict." 14 H.R. Proc., Pt. 2, 1971 Sess.,

p. 698, remarks of Representative John A. Carrozzella. Similar remarks were made by the Senate chairman of the committee. "Mr. President, this bill simply rescinds Sec. 14-218 of the General Statutes. Two years ago when we passed the penal code in the repealer section it was inadvertently left out. So on Oct. 1, the new penal code will take effect and at the same time this will remain in effect until Oct. 1, this is Sec. 14-218. So I urge its passage." 14 S. Proc., Pt. 2, 1971 Sess., p. 713, remarks of Senator Jay W. Jackson.

The enactment of Public Acts 1971, No. 30, effectively removed negligent homicide with a motor vehicle from our statutes. This void, however, was corrected by the General Assembly two years later when it reenacted the negligent homicide law along with other amendments to the penal code. Public Acts 1973, No. 73-639, § 5. In its new form, it now extended to private parking areas by its modified terms and specifically classified a violation of the law for purposes of punishment as a misdemeanor. Codified as General Statutes (Rev. to 1975) § 53a-58a, it provided: "(a) A person is guilty of negligent homicide with a motor vehicle when in consequence of the negligent operation of a motor vehicle he causes the death of another person. (b) Negligent homicide is a class B misdemeanor." As a class B misdemeanor, the maximum fine previously specified in General Statutes § 14-218 was increased to $1000. General Statutes § 53a-42 (1). The maximum imprisonment remained at six months. General Statutes § 53a-36 (2). The negligent homicide with a motor vehicle law continued in this form until 1981.

In *State* v. *Anonymous (1980-5)*, 36 Conn. Sup. 527, 416 A.2d 168 (1980), the former Appellate Session of the Superior Court had before it the determination of the nature of the offense of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a of the motor vehi-

cle laws. After finding that the felony, misdemeanor, and violation definitions of the penal code apply also to charges based upon sections of the General Statutes not included in the code, the court "concluded that the term 'motor vehicle violations,' not being otherwise defined, incorporates the definition of 'violation' contained in § 53a-27 (a) as an offense punishable only by a fine. The comment of the draftsmen of the penal code upon § 53a-24 (a) states that ' "[v]iolation," which must be read in connection with section 53a-27, means an offense calling only for a fine for breach thereof.' 27A Connecticut General Statutes, Annotated (West Ed.), commission comment (1971). Our view is consistent with this comment. The exception of 'motor vehicle violations' from the definition of 'offense' is limited to breaches of statutes involving motor vehicles when the only penalty which can be imposed is a fine. Operating under the influence as prohibited by § 14-227a does not fall within the exception because it is not punishable as a 'violation' defined by § 53a-27, but as an 'unclassified misdemeanor' under § 53a-26 (c). Since it is a misdemeanor, it is also a 'crime' as defined by § 53a-24 (a)." *State* v. *Anonymous (1980–5)*, supra, 530–31.

In that case, the state had unsuccessfuly claimed that operating under the influence of liquor was not a crime because it fell within the "motor vehicle violation" exception to the definition of "offense" in General Statutes § 53a-24 of the penal code. The court's reply to that contention was as follows: "The thrust of this argument would seem to apply to a number of other statutes prohibiting certain acts with a motor vehicle which have usually been regarded as criminal, such as misconduct with a motor vehicle in violation of General Statutes § 53a-57 or negligent homicide with a motor vehicle in violation of General Statutes § 53a-58a." *State* v. *Anonymous (1980–5)*, supra, 529.

In *State* v. *Anonymous (1980–5)*, supra, the trial court had concluded that it had no jurisdiction to grant the defendant's application for accelerated rehabilitation because the underlying charge did not constitute a "crime." Therefore, the defendant did not qualify for such pretrial relief which is available under General Statutes (Rev. to 1979) § 54-76p only to "persons accused of a crime, not of a serious nature." The Appellate Session found error in that ruling. Since it held that operating a motor vehicle under the influence of intoxicating liquor in violation of § 14-227a was a "crime," the defendant was eligible for such discretionary relief.

In the following session of the legislature, negligent homicide with a motor vehicle was transferred from its then location in General Statutes § 53a-58a of the penal code to its present position in § 14-222a of the motor vehicle laws, title 14. This was effected by the enactment of Public Acts 1981, No. 81-26, which provided: "Section 1. Any person who, in consequence of the negligent operation of a motor vehicle, causes the death of another person shall be fined not more than one thousand dollars or imprisoned not more than six months or both. Sec. 2. Section 53a-58a of the general statutes is repealed." The expressed purpose of the bill at its adoption was, as noted by the majority opinion, "[t]o classify negligent homicide with a motor vehicle as a motor vehicle violation rather than a criminal offense in the penal code." House Bill No. 5079 (1981). The purpose of this legislation was explained in the two chambers of the legislature. In the House proceedings, Representative Richard D. Tulisano remarked as follows: "Mr. Speaker, the purpose of this bill is to move from the criminal statutes of the Motor Vehicle statutes a legislation known as negligent homicide with a motor vehicle. . . . What it recognizes is that an act of simple negligence, nothing to do with criminal negli-

gence, nothing to do with intent, nothing to do with drinking, is really what is known as [malum prohibitum] rather than [malum in se]. In effect, [it recognizes] that in our criminal statutes there should be some form of intent to incur criminal responsibility. Criminal negligence, recklessness, includes in the definition in our criminal statutes some form of intent. There is a divided issue as to whether or not this statute is constitutional. . . .

"Recognizing, however, that simple negligence, in itself, should incur some repercussion to the operator, by moving it over to the motor vehicle statutes section of our statutes, we insure that we do not run a constitutional problem with it not requiring what is known as the mens rea, that is the intent to commit a crime, and becomes just as something that is prohibited on its face. The penalties do not change. Nothing changes in the existing law, but its intent is to make sure that this conduct will not be declared unconstitutional. The penalties remain the same, but it's putting in of [title] 14 of our General Statutes. I might point out that when this bill was first enacted and for many years it was in fact situated and at one point it was repealed and they reenacted it. They put it in [title] 53a and that's inexplainable to me. But I think that's where it belongs so we can keep it on the books." 24 H.R. Proc., Pt. 3, 1981 Sess., pp. 884–85.

In answer to the question whether a person accused of negligent homicide with a motor vehicle as reenacted under the bill in title 14, the motor vehicle laws, would be able to take advantage of the pretrial accelerated rehabilitation program, Representative Tulisano replied: "There is an Appellate Session decision which indicates any time there is, in fact, a potential penalty for prison, imprisonment, so that we could have drunken driving statutes as well as this statute, even though they are in the motor vehicle section of our statutes, acceler-

ated rehabilitation may be available even though it is not a 'crime' in which a mens rea is required." Id., p. 886.

In the Senate Proceedings, a more pointed purpose was expressed, as noted by the majority opinion, in the following remarks of Senator Howard T. Owens, Jr.: "The Bill itself, under existing law, a person who causes the death of another person by negligently operating a motor vehicle, may be fined up to $1,000 or imprisoned up to six months or both. This Bill would change the classification of the offense from a Class B misdemeanor to a motor vehicle violation. . . . [T]his should be classified as a motor vehicle violation and in fact, not a criminal offense and this is the purpose of the statute." 24 S. Proc., Pt. 3, 1981 Sess., pp. 707–708.

The legislature to this time has failed to define "a motor vehicle violation" within the context of the exception to § 53a-24 of the penal code, and the reenactment of § 14-222a as a motor vehicle law did not expressly classify the law as a "motor vehicle violation." The transfer of the negligent homicide with a motor vehicle statute from title 53a, named "Penal Code," to title 14, named "Motor Vehicles. Use of the Highway by Vehicles. Gasoline." did not effect any change in the nature or classification of the law other than to change it from a class B misdemeanor to an unclassified misdemeanor under the provisions of General Statutes § 53a-26. "We must look at [§ 14-222a] as drafted, not at its purported aim. ' "[I]n the interpretation of statutes, the intent of the legislature is to be found not in what it meant to say, but in what it did say." ' " State v. Smith, 194 Conn. 213, 222, 479 A.2d 814 (1984). " ' "A legislative intention not expressed in some appropriate manner has no legal existence." ' " Id.; Hayes v. Smith, 194 Conn. 52, 57–58, 480 A.2d 425 (1984). The transfer of a law from one title or chapter of the general statutes to another

title or chapter without any change in the provisions in the statute, or exclusion of purpose in the law, is an unexpressed statement of any legislative intention for the move. By itself, the relocation of a statute in the codification of statutes without a textual change in its provisions neither adds nor subtracts from its meaning, effect or application.

Title 14 contains other laws that are defined and classified as offenses and crimes under the provisions of General Statutes § 53a-24. These include both unclassified felonies; General Statutes § 53a-25; and unclassified misdemeanors. General Statutes § 53a-26. "Operating under the influence of liquor, or 'drunken driving' in ordinary parlance, has been commonly regarded as a 'crime' in the general sense of that term. It is punishable under § 14-227a (e) by a fine or imprisonment or both for a first offense, and subsequent convictions carry mandatory jail terms. In our cases, it has been consistently referred to as a crime. *State* v. *Englehart,* 158 Conn. 117, 119, 256 A.2d 231 (1969); *State* v. *DeCoster,* 147 Conn. 502, 503, 162 A.2d 704 (1960); *State* v. *McDonough,* 129 Conn. 483, 484, 29 A.2d 582 (1942)." *State* v. *Anonymous (1980–5),* supra, 528.

A review of title 14 discloses many provisions carrying penalties beyond the scope of a "violation," defined in General Statutes § 53a-27 (a) as "[a]n offense, for which the only sentence authorized is a fine  . . . unless expressly designated an infraction." Any person who violates § 14-16 (a) relating to the transfer of ownership of a motor vehicle "shall be subject to the penalty provided for false statement." General Statutes § 14-16 (g). "False statement is a class A misdemeanor" exacting a fine of not more than $1000 or imprisonment of not more than one year, or both. General Statutes §§ 53a-157 (b); 53a-36 (1); 53a-42 (1). A subsequent violation of § 14-16 (g) requiring a certifi-

cate upon the sale of a used vehicle for which a certificate of title has not been issued may invoke a fine of not more than $500 or imprisonment of not more than one year, or both. General Statutes § 14-16 (g). Any person who violates § 14-29 requiring insurance or sufficient bond for public service vehicles shall be fined not more than $500 or imprisoned not more than one year, or both. General Statutes § 14-29 (e).

"Any person, firm or corporation engaging in the business of the repairing of any motor vehicle without a license shall be guilty of a class C misdemeanor." General Statutes § 14-52 (c). Under § 14-110, "[a]ny person who swears or affirms falsely in regard to any matter respecting which an oath or affirmation is required by this chapter or by the commissioner shall be guilty of perjury or false statement, as the case may be." General Statutes § 14-110. Perjury is a class D felony, the penalty for which is imprisonment of not less than one year and not more than five years or a fine of up to $5000, or both. General Statutes §§ 53a-156 (b), 53a-35a (6), and 53a-41 (2). As noted above, the giving of a false statement is a class A misdemeanor. General Statutes § 53a-157. The giving of false information in a motor vehicle accident report or the filing of forged or unauthorized evidence of proof of financial responsibility may subject one to a fine of up to $1000 or imprisonment of up to one year, or both. General Statutes § 14-133 (b). Any person who violates the motor vehicle law pertaining to the mutilation or removal of vehicle identification numbers shall be fined not more than $500 or imprisoned not more than one year, or both. General Statutes § 14-149 (e).

Chapter 247 of title 14, cited as the Uniform Motor Vehicle Certificate of Title and Anti-Theft Act; General Statutes § 14-211; contains the severest penalties of the motor vehicle laws. These are specified in § 14-196, as follows: "(a) A person who, with fraudu-

lent intent: (1) Alters, forges or counterfeits a certificate of title; (2) alters or forges an assignment of a certificate of title, or an assignment or release of a security interest, on a certificate of title or a form the commissioner prescribes; (3) has possession of or uses a certificate of title knowing it to have been altered, forged or counterfeited; or (4) uses a false or fictitious name or address, or makes a material false statement, or fails to disclose a security interest, or conceals any other material fact, in an application for a certificate of title, shall be fined not less than five hundred dollars or more than one thousand dollars or be imprisoned not less than one year or more than five years or be both fined and imprisoned. (b) A person who: (1) With fraudulent intent, permits another, not entitled thereto, to use or have possession of a certificate of title; (2) wilfully fails to mail or deliver a certificate of title or application therefor to the commissioner within ten days after the time required by this chapter; (3) wilfully fails to deliver to his transferee a certificate of title within ten days after the time required by this chapter; or (4) wilfully violates any provision of this chapter, except as provided in subsection (a), shall be fined not more than one thousand dollars or imprisoned not more than two years or both."

The severity of these provisions is intensified by § 14-200, which states: "The penal provisions of this chapter in no way repeal or modify any existing provision of criminal law but are additional and supplementary thereto."

Chapter 248, entitled "Vehicle Highway Use," contains the most commonly cited penal provisions of title 14, including § 14-222a, negligent homicide with a motor vehicle, under consideration here. The operation of a motor vehicle after the vehicle's registration or the operator's license has been refused, suspended or revoked subjects the operator to a fine of not less than

$150 nor more than $200 or imprisonment of not more than ninety days, or both. For a subsequent conviction, the fine shall be not less than $200 nor more than $600 and imprisonment shall be for not more than one year. General Statutes § 14-215 (b). If, however, the operator's license was suspended for any one of these violations: operation while under the influence of intoxicating liquor or any drug (General Statutes § 14-227a [a]); refusal to submit to a blood, breath or urine test (General Statutes § 14-227b [d] or [f]); manslaughter in the second degree with a motor vehicle while intoxicated (General Statutes § 53a-56b); or assault in the second degree with a motor vehicle while intoxicated (General Statutes § 53a-60d); the operator, upon conviction, shall be fined not less than $500 nor more than $1000 *and* imprisoned not more than one year, "thirty days of which may not be suspended or reduced in any manner." Public Acts 1985, No. 85-387, amending General Statutes § 14-215 (c).

A subsequent conviction of reckless driving in violation of § 14-222 increases the penalty to a fine of up to $600 and imprisonment of not more than one year, or both. General Statutes § 14-222 (b). An operator who evades responsibility after an accident which causes serious physical injury, to or results in the death of another person may be fined not more than $5000 or be imprisoned not less than one year nor more than five years, or both. General Statutes § 14-224 (d). "Serious physical injury" is defined in § 53a-3 of the penal code. Evasion of responsiblity in accidents of lesser consequence carry a possible maximum imprisonment of one year. General Statutes § 14-224 (e).

The penalties for operating under the influence of liquor or drugs are progressive in nature, ranging from a fine of not less than $500 nor more than $1000 or imprisonment of not more than six months, or both, for a first offense, to a fine of not less than $2000 nor

more than $8000 and imprisonment of not more than three years, one year of which may not be suspended or reduced in any manner, for a fourth and subsequent offense. General Statutes § 14-227a (h). A subsequent violation of following too closely with intent to harass or intimidate the preceding driver subjects the violator to a maximum penalty of a fine of $600 or imprisonment of one year, or both. General Statutes § 14-240a.

The foregoing motor vehicle laws of Title 14 and the penalties prescribed for their "violation" illustrate only the upper gradations of penalties provided for the more serious motor vehicle offenses. Their range of possible imprisonment extends from one year to five years, the equivalent terms for class A misdemeanors and class D felonies. General Statutes §§ 53a-35a; 53a-36. Many other motor vehicle laws provide for lesser terms of imprisonment, such as six months for a violation § 14-222a, negligent homicide with a motor vehicle. Such penalties are equivalent to those provided for class B and class C misdemeanors. General Statutes § 53a-36. Minor motor vehicle laws authorize fines only, constituting, or being designated as, violations, or are designated as infractions, also authorizing fines only. General Statutes §§ 53a-27, 51-164m.

The inescapable conclusion to be drawn from this review of the motor vehicle laws contained in title 14 is that the more serious violations are crimes and offenses consisting of unclassified misdemeanors, such as § 14-222a, negligent homicide with a motor vehicle, and unclassified felonies. See General Statutes §§ 53a-25 (c), 53a-26 (c); see also *State* v. *Anonymous (1980–5)*, supra, 531.

To this extent, I disagree with the majority opinion.