STATE OF CONNECTICUT *v.* WILLIAM GUCKIAN
(9539)
(9540)

DUPONT, C. J., DALY, O'CONNELL, NORCOTT, FOTI, LAVERY,
LANDAU, HEIMAN and FREEDMAN, Js.

Argued January 15—decision released March 31, 1992

*Jack W. Fischer,* deputy assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan,* state's attorney, *Michael E. O'Hare,* former deputy

assistant state's attorney, and *Robert Katz,* supervisory assistant state's attorney, for the appellant (state).

*Lawrence D. Church,* with whom, on the brief, was *Cheryl Brienza Cook,* for the appellee (defendant).

NORCOTT, J. The state appeals, with the trial court's permission, from the judgment granting the defendant credit toward his prison sentence. The credit was based on the court's determination that the defendant was eligible for state sponsored alcoholism treatment, after he pleaded guilty to operating a motor vehicle while his license was under suspension in violation of General Statutes § 14-215 (c) and violating his probation contrary to General Statutes § 53a-32.

The state claims the trial court (1) improperly found that a violation of General Statutes § 14-215 (c) is a crime within the meaning of Public Acts 1989, No. 89-390 (the Act), (2) made factual determinations that are improper under the Act, (3) failed to sentence the defendant as mandated by General Statutes § 14-215 (c), and (4) unlawfully sentenced the defendant for violating his probation.

A panel of three judges of this court initially heard arguments in this case in November, 1991. Thereafter, we requested, sua sponte, further argument en banc on the issue of whether a violation of General Statutes § 14-215 (c) constitutes a crime for purposes of the Act. We now affirm the judgment of the trial court in part, and reverse it in part.

The following facts are relevant to this appeal. On November 28, 1989, the defendant appeared before the trial court, *McGrath, J.,* and pleaded guilty to charges of operating a motor vehicle while under the influence of liquor or drugs in violation of General Statutes § 14-227a (a), and reckless driving in violation of General Statutes § 14-222. He was sentenced to concur-

rent terms of six months imprisonment on each count, execution suspended, and placed on probation for one year. The defendant's right to operate a motor vehicle also was suspended for one year pursuant to General Statutes § 14-227a (h).

In March, 1990, the defendant was charged with operating a motor vehicle while his license was under suspension in violation of General Statutes § 14-215 (c).[1] As a result, he was charged in April, 1990, with violation of his probation under the provisions of General Statutes § 53a-32. He was released from custody on a promise to appear in court, subject to the condition that he cooperate with a substance abuse counseling program known as Neon in obtaining a drug and alcohol evaluation.

Counselors at Neon referred the defendant to another program, the Meridian Center, where it was determined that he needed residential treatment. As a result, the defendant was referred to the Berkshire Woods Chemical Dependence Treatment Center in Newtown, which he voluntarily entered in May, 1990, as a patient in its alcohol abuse program. After successfully completing the program, he was discharged on August 3, 1990.

On August 16, 1990, the defendant returned to court, where the trial court, *Bingham, J.,* granted his motion for an examination pursuant to § 3 of the Act[2] to deter-

[1] General Statutes § 14-215 (c) provides in pertinent part: "Any person who operates any motor vehicle during the period his operator's license or right to operate a motor vehicle in this state is under suspension or revocation on account of a violation of subsection (a) of section 14-227a . . . shall be . . . imprisoned not more than one year, thirty consecutive days of which may not be suspended or reduced in any manner."

[2] Section 3 of Public Acts 1989, No. 89-390, is codified in General Statutes § 17a-650, which provides: "ORDER FOR EXAMINATION FOR ALCOHOL OR DRUG DEPENDENCY. The court, on its own motion or on motion of the state's attorney or a person charged with a crime or convicted of a crime but not yet sentenced, may order, if the interests of justice will be served,

mine if he was drug or alcohol dependent with respect to both the probation violation and operating under suspension charges. The state objected, and its exception was duly noted.

On August 23, 1990, the court heard testimony about the defendant's evaluations from Kenneth Hodge, a substance abuse counselor at Neon. Hodge testified that the defendant is an alcoholic, and that he needed and would benefit from further treatment. When the defendant requested credit toward his sentence for the violations of General Statutes §§ 14-215 (c) and 53a-32 under § 9 of the Act[3] for the time spent in residential

that such person be examined, pursuant to the provisions of section 17a-651, to determine if the person is alcohol-dependent or drug-dependent and eligible for treatment under section 17a-653 or 17a-656. A probation officer may order that such an examination be conducted as part of a presentence investigation conducted pursuant to the provisions of section 54-91a."

[3] Section 9 of Public Acts 1989, No. 89-390, is codified in General Statutes § 17a-656, which provides: "ORDER OF TREATMENT FOR ALCOHOLIC OR DRUG DEPENDENCY OF CONVICTED PERSON. (a) The provisions of this section shall not apply to any person convicted of murder, attempt to commit murder, kidnaping, robbery in the first degree or any felony involving serious physical injury or to any person who has been previously ordered to be treated under this section or section 19a-387 or 21a-285 of the general statutes, revised to 1989.

"(b) Before sentencing a convicted person, the court may consider any information before it concerning the alcohol or drug dependency of the person, including an examination report made pursuant to section 17a-651. The court may impose a sentence and order treatment as provided in subsection (c) of this section if the court finds that (1) the convicted person was an alcohol-dependent or drug-dependent person at the time of the crime for which he was convicted, (2) there was a relationship between the dependency and the crime, (3) the person presently needs and is likely to benefit from treatment for the dependency, (4) the person is not ineligible under subsection (a) of this section and (5) the person meets the criteria for probation under subsection (c) of section 53a-29.

"(c) The court may, after imposing sentence, (1) suspend execution of a sentence of imprisonment, either entirely or after a period set by the court, (2) impose a period of probation as provided in this section and subsections (b) and (c) of section 53a-28 and (3) as a condition of probation, order the office of adult probation to place the person in an appropriate treatment program for alcohol or drug dependency. The court may require that a pro-

treatment at Berkshire Woods, the state renewed its objections, which the trial court overruled.

The state then raised further objections when the court indicated it construed § 9 as authorizing the granting of credit. The state argued that § 9 (e) does not permit the court to grant credit toward completion of the defendant's mandatory minimum sentence. The state also argued that § 9 (c) permits the court to order treatment as a condition of probation, but does not permit the court to order treatment in lieu of incarceration.

Before ruling on the state's objections, the court put the defendant to plea. He thereupon pleaded guilty to operating a motor vehicle while his license was under suspension and admitted having violated the terms of his probation. After further argument from the parties, the court ruled that the Act was applicable to the defendant's case.[4] The court found that the defendant had been treated in a licensed, state-run program

bation officer have at least one contact per week with the treatment program in which the person is participating and at least one contact per week with the person when such person is not participating in an inpatient program. Placement in a treatment program shall be no earlier than the date that space is available in a treatment program as reported by the examining committee under section 17a-651.

"(d) The court may order that the person be transferred immediately to a treatment program provided space is available as provided in subsection (c) of this section. If the court orders an immediate transfer, it shall issue a mittimus directing the sheriff to convey the person to the treatment program.

"(e) Time spent in a treatment program by a person pursuant to the provisions of this section shall not be credited against any sentence, the execution of which was suspended because of such treatment.

"(f) Any violation of conditions set under this section shall be a violation of probation under section 53a-32.

"(g) The provisions of this section shall not be construed to limit the application of any provision of the general statutes requiring mandatory minimum sentences and prohibiting probation for certain offenses."

[4] Although the court previously ordered the defendant to undergo substance abuse evaluation with regard to both charges, it applied the Act only as to the violation of General Statutes § 14-215 (c).

between May, 1990, when he was admitted, and August, 1990, when he was discharged. The court then entered findings, pursuant to § 9 (b), that the defendant was alcohol dependent at the time of the crime, that there was a relationship between the dependency and the crime, and that the defendant needed and was likely to benefit from treatment. The court also found that the defendant was eligible for treatment under § 9 and that he met the criteria for probation.

After canvassing the defendant, the court accepted his guilty plea to the operating under suspension charge and imposed sentence. The defendant was fined $500 and given a six month prison term, execution suspended after thirty days, with probation for eighteen months. The court then granted the defendant credit for thirty days based on the time spent at Berkshire Woods. After another canvass to determine if the defendant had voluntarily admitted violating his probation, the court opened and vacated the judgment by which the probation was imposed. It then sentenced the defendant to six months imprisonment, execution suspended, and eighteen months probation. No mittimus was issued.

On November 30, 1990, the state moved for articulation of the trial court's rulings, and on May 15, 1991, the trial court issued an articulation. This appeal followed.

I

### Whether Operating Under Suspension Is a Crime Under General Statutes §§ 17a-648 Through 17a-658

The state first claims the trial court improperly found the defendant eligible for state sponsored alcoholism treatment because only people charged with or convicted of a "crime" are within the scope of the Act's coverage. The state argues that under *State* v. *Brown,*

22 Conn. App. 108, 575 A.2d 699, cert. denied, 216 Conn. 811, 580 A.2d 61 (1990), and *State* v. *Kluttz,* 9 Conn. App. 686, 521 A.2d 178 (1987), a violation of General Statutes § 14-215 (c) is not a "crime" but a "motor vehicle violation" within the meaning of our penal code's definitional scheme, General Statutes §§ 53a-24[5] through 53a-27.

We begin with a brief discussion of the pertinent case law as a basis of our analysis. In *State* v. *Anonymous (1980-5),* 36 Conn. Sup. 527, 528, 416 A.2d 168 (1980), the Appellate Session of the Superior Court held that a violation of General Statutes § 14-227a is a "crime." The court noted that although our statutes do not define "motor vehicle violation," a "violation" is defined as "[a]n offense, for which the only sentence authorized is a fine . . . unless expressly designated an infraction. General Statutes § 53a-27 (a)." (Internal quotation marks omitted.) Id., 530. The court reasoned that a violation of § 14-227a is a "crime" because it could not qualify as a "motor vehicle violation," since it is punishable by imprisonment as well as a fine.

Seven years later in *State* v. *Kluttz,* supra, this court determined that "motor vehicle violations" are not

---

[5] General Statutes § 53a-24 provides: "OFFENSE DEFINED. APPLICATION OF SENTENCING PROVISIONS TO MOTOR VEHICLE AND DRUG SELLING VIOLATORS. (a) The term 'offense' means any crime or violation which constitutes a breach of any law of this state or of any other state or of federal law or local law or ordinance of a political subdivision of this state, for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, except one that defines a motor vehicle violation or is deemed to be an infraction. The term 'crime' comprises felonies and misdemeanors. Every offense which is not a 'crime' is a 'violation.' Conviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense.

"(b) Notwithstanding the provisions of subsection (a), the provisions of sections 53a-28 to 53a-44, inclusive, shall apply to motor vehicle violations. Said provisions shall apply to convictions under section 21a-278 except that the execution of any mandatory minimum sentence imposed under the provisions of said section may not be suspended."

"crimes" under our penal code's definitional statutes because "offense," as defined in General Statutes § 53a-24 (a), excludes "motor vehicle violations." Id., 692–93. We held that negligent homicide with a motor vehicle in violation of General Statutes § 14-222a is not an "offense" or a "crime" within the meaning of General Statutes § 53a-24 (a), but that it is an offense for purposes of our lesser included offense doctrine. *State* v. *Brown,* supra, 111. "We reasoned that '[w]hat may or may not be a criminal offense for purposes of a particular statutory categorization is not necessarily determinative of whether it is a criminal offense for purposes of the lesser included offense doctrine. . . . Whether the lesser included offense doctrine should apply to include a transgression of the law which the legislature has categorized for certain purposes as noncriminal depends, not on that categorization, but on the functions and purposes of the doctrine itself.' " (Citation omitted.) Id., 111–12.

More recently in *State* v. *Brown,* supra, we held that a violation of General Statutes § 14-227a is a violation of the criminal law for purposes of a defendant's conditions of probation. Id., 112. As in *State* v. *Kluttz,* supra, our analysis focused not on the legislature's categorization of the law, but on the functions and purposes of the matter at issue, which was probation. We found that the central concerns of probation are rehabilitation of the probationer and the safety of the community, both of which were addressed as part of the defendant's probation. Because the law that was violated, General Statutes § 14-227a, proscribed the type of conduct contemplated by the probation order, we held that General Statutes § 14-227a constituted a "criminal law" for purposes of the defendant's probation. *State* v. *Brown,* supra, 113.

In the matter before us today, the state argues with great force that we must adhere to our determination

in *State* v. *Kluttz,* supra, that "motor vehicle violations" are not "crimes" and find that the trial court incorrectly determined that a violation of General Statutes § 14-215 (c) is a "crime" within the meaning of Public Acts 1989, No. 89-390. The state contends that when the legislature drafted the Act it was aware of the holding in *State* v. *Anonymous (1980-5),* supra, and thus intended to exempt from its coverage a specific "crime," rather than a "motor vehicle violation." The state further argues that because the Act was adopted two years after *Kluttz,* which it asserts did not overrule *State* v. *Anonymous (1980-5),* supra, the legislature drafted the measure in light of the *Kluttz* interpretation of the term "crime."

Although the state's argument at first blush is enticing, a closer look reveals that it fails to account for the holding and rationale of *State* v. *Kluttz,* supra. The state's argument overlooks that in *Kluttz,* and later in *Brown,* we eschewed rigid application of our penal code's definitional statutes and instead considered them in the context of the matter at hand, along with the functions and purposes of the laws at issue. If the legislature was aware of the *Kluttz* interpretation of the word "crime" when it adopted Public Acts 1989, No. 89-390, it also was aware of the rationale behind our holding that a "motor vehicle violation" under the penal code's definitional statutes can nevertheless be an offense for purposes of the lesser included offense doctrine. The legislature is presumed to be mindful of judicial construction that is relevant to any legislation it enacts. *Wilson* v. *Security Ins. Co.,* 213 Conn. 532, 539, 569 A.2d 40, cert. denied, U.S. , 111 S. Ct. 52, 112 L. Ed. 2d 28 (1990); *Murach* v. *Planning & Zoning Commission,* 196 Conn. 192, 200 n.14, 491 A.2d 1058 (1985). It is presumed to know "all the existing statutes and the effect that its action or nonaction will have upon any one of them," and it is "presumed to

have intended that effect." (Internal quotation marks omitted.) *All Brand Importers, Inc.* v. *Department of Liquor Control,* 213 Conn. 184, 197, 567 A.2d 1156 (1989). We must conclude, then, that in drafting Public Acts 1989, No. 89-390, the legislature was aware of the rationale underlying *Kluttz,* as well as its holding, and chose to leave them intact. Because the state offers no compelling reason to abandon the mode of analysis employed in *Kluttz* and *Brown,* we decline to do so now. Whether the word "crime" as used in the penal code includes motor vehicle violations, our case law indicates that a motor vehicle offense is a crime for purposes of accelerated rehabilitation, as in *Anonymous (1980-5),* for purposes of lesser included offense analysis, as in *Kluttz,* and for purposes of probation conditions, as in *Brown.* The question of this case is whether a motor vehicle offense is a "crime" for purposes of Public Acts 1989, No. 89-390.

In ascertaining the functions and purposes of Public Acts 1989, No. 89-390, our careful review of its legislative history discloses that it was adopted in response to the pervasive problems in our society brought on by burgeoning drug and alcohol abuse. The Act affords certain substance abusers an opportunity for state sponsored treatment as an alternative to the traditional odyssey through our already crowded criminal justice system. To implement its intentions, the legislature earmarked approximately $27 million for more beds in treatment facilities, and for improvements in our judicial system and police forces statewide. It also provided for procedures for substance abuse evaluations of defendants, and their subsequent placement and monitoring in state approved treatment facilities.

While we agree with the parties that much of the legislative history is not helpful, our review discloses that several of the Act's sponsors on the floor of the Senate addressed its underlying purposes and ration-

ale. Senator John C. Daniels stated that the bill "represents a major, a major assault on drugs in the state of Connecticut." 32 S. Proc., Pt. 11, 1989 Sess., p. 3630. The remarks of Senator Anthony V. Avallone yield insight into the legislature's objective of promoting the use of treatment programs for those who qualify. Discussing the enormous demand for treatment of drug and alcohol related problems, Senator Avallone stated that many substance abusers often resort to violating the law deliberately so that they can be arrested because they believe that is the only way they can gain admittance to treatment programs. "For every bed that's filled," Senator Avallone remarked, "there are hundreds of people out there looking for help. And when they get into the Criminal Justice System, instead of it being [a] funnel . . . unfortunately it's a hole into which they drop." 32 S. Proc., Pt. 11, 1989 Sess., p. 3639. Additionally, Representative Richard D. Tulisano stated on the floor of the House of Representatives that the Act establishes "a drug rehabilitation system for people who come into the criminal justice system." 32 H.R. Proc., Pt. 40, 1989 Sess., p. 14288.

Although the legislative history contains no discussion as to whether the Act covers those accused of violating General Statutes § 14-215 (c), it does shed light on the broad reach the legislature intended that the Act have. Senator Avallone repeatedly and unequivocally stated that the Act "give[s] the court discretion, in less serious cases, misdemeanors and class D felonies, to suspend prosecution . . . to give people an opportunity . . . for treatment programs"; 32 S. Proc., Pt. 11, 1989 Sess., p. 3635; and that it comes into play "when the individual is arrested, and presented to the court for the first time, and we know that the crime is a misdemeanor or a class D felony." 32 S. Proc., Pt. 11, 1989 Sess., p. 3667; see also 32 S.

Proc., Pt. 11, 1989 Sess., pp. 3637–38 ("[t]his is for mis-demeanors, and class D felons"). (Remarks of Sena-tor Avallone.)

Our Supreme Court has declared that statements made on the floor of the House of Representatives, "although not controlling, may be judicially noticed and are a strong indication of legislative intent." (Internal quotation marks omitted.) *Elections Review Commit-tee of the Eighth Utilities District* v. *Freedom of Infor-mation Commission,* 219 Conn. 685, 695, 595 A.2d 313 (1991), quoting *Manchester Sand & Gravel Co.* v. *South Windsor,* 203 Conn. 267, 276, 524 A.2d 621 (1987). The same principle applies with equal force to statements made on the floor of the Senate. See *Winchester Woods Associates* v. *Planning & Zoning Commission,* 219 Conn. 303, 310–11, 592 A.2d 953 (1991). Such state-ments are entitled to particular weight and careful con-sideration in discerning legislative intent when they are made by the bill's sponsor or by legislators who report it out of committee. *United Illuminating Co.* v. *Groppo,* 220 Conn. 749, 760 n.14, 601 A.2d 1005 (1992); see gen-erally 2A J. Sutherland, Statutory Construction (1992) §§ 48.14, 48.15. Therefore, the statements of Senators Daniels and Avallone on the floor of the Senate are a strong indication that the legislature intended the Act to apply to less serious transgressions so as to divert substance abusers out of the judicial system and into state approved treatment programs. We see no rea-son to disregard the statements of Senators Daniels and Avallone, or those of Representative Tulisano. Their remarks are consistent, and no other explana-tion of the Act's underlying purposes or policies was offered in either chamber of the legislature. See *George P. Gustin Associates, Inc.* v. *Dubno,* 203 Conn. 198, 211, 524 A.2d 603 (1987).

Here, the context in which the legislature used the word "crime" dictates that we not give the Act the crabbed interpretation the state suggests. To do so

would frustrate the legislative intent to cast its net broadly in an effort to combat substance abuse and lessen the dangers posed to society as well as the tremendous demands placed on its resources. The defendant's right to operate a motor vehicle was suspended after he pleaded guilty in November, 1989, to violating General Statutes §§ 14-227a and 14-222. The law he subsequently violated, General Statutes § 14-215 (c), proscribes conduct paradigmatic of that which the Act seeks to remedy, driving under the influence of alcohol. Therefore, given the functions and purposes of the Act, the policies it is designed to implement, the mischief it seeks to remedy and the goals it aims to achieve, we conclude that the trial court correctly determined that a violation of General Statutes § 14-215 (c) is a "crime" for the purposes of General Statutes §§ 17a-648 through 17a-658.

## II

### FACTUAL DETERMINATIONS

The state next claims that even if the Act does apply to the defendant, the trial court made improper factual determinations under § 9 (b).[6] Specifically, the state claims the court improperly found (1) that the defendant was alcohol dependent at the time he was charged with violating General Statutes § 14-215 (c), (2) that the defendant needed and was likely to benefit from further treatment, and (3) that a relationship existed between the alcohol dependency and the crime. We disagree.

### A

At trial, the court heard testimony from Kenneth Hodge, the Neon counselor, who discussed the defendant's treatment program and substance abuse evaluations. In determining that the defendant was alcohol

---

[6] General Statutes § 17a-656; see footnote 3, supra.

dependent in March, 1990, when he was charged with operating under suspension, the court relied on Hodge's testimony and the defendant's November, 1989 sentencing for driving while under the influence. The record further discloses that in determining that the defendant needed and was likely to benefit from further treatment, the court found Hodge to be a competent substance abuse counselor and relied on his testimony that staff at the Meridian Center believed further treatment was appropriate.[7]

As a threshold matter, we must identify the appropriate standard under which we review these claims. In addressing a challenge to a trial court's factual findings, an appellate court's function is limited to determining whether those findings are clearly erroneous. *In re Keijam T.,* 221 Conn. 109, 116, 602 A.2d 967 (1992). We cannot retry the facts; *Commissioner v. Youth Challenge of Greater Hartford, Inc.,* 219 Conn. 657, 667, 594 A.2d 958 (1991); nor can we pass on the credibility of witnesses. *Plikus v. Plikus,* 26 Conn. App. 174, 177, 599 A.2d 392 (1991). It is the function of the court as trier of fact to assess the credibility of witnesses. *Winchester Woods Associates v. Planning & Zoning Commission,* supra, 308; *Francoline v. Klatt,* 26 Conn. App. 203, 210, 600 A.2d 8 (1991), cert. granted, 221 Conn. 913, 603 A.2d 404 (1992).

Although the state argues that no evidence existed regarding the defendant's drug dependency at the time

---

[7] Although the state admits it did not object at trial to the hearsay portion of Hodge's testimony, it nevertheless urges that we review this claim. Ordinarily, we do not review claims of error not properly preserved below. *Ralto Developers, Inc. v. Environmental Impact Commission,* 220 Conn. 54, 59, 594 A.2d 981 (1991). In this case, however, because the record clearly shows that the state repeatedly alerted the trial court to the issue it now presses on appeal, the failure to object to Hodge's testimony is not a waiver of the state's claim as long as that claim remains the same on appeal, as it does here. See *Sokolowski v. Medi Mart, Inc.,* 24 Conn. App. 276, 279–80, 587 A.2d 1056 (1991).

he was arrested in March, 1990, such is not the case. The evidence before the court included the record of the defendant's sentencing in November, 1989, and Hodge's testimony, which the court was entitled to credit. The state further contends that the evidence is insufficient to support the court's finding that the defendant needed and was likely to benefit from further treatment because nothing in the record indicates Hodge or the Meridian counselors were qualified to make such a judgment. This argument, however, is utterly lacking in merit because the state failed to object at trial to Hodge's testimony. Hearsay statements that come into a case without objection may be relied on by the trier "in proof of the matters stated therein, for whatever they were worth on their face." (Internal quotation marks omitted.) *Volck* v. *Muzio*, 204 Conn. 507, 518, 529 A.2d 177 (1987). Accordingly, we cannot say that it was clearly erroneous for the court to conclude that the defendant was alcohol dependent at the time he was arrested, and that he needed and was likely to benefit from further treatment.

B

The state also asserts that the trial court's finding that a relationship existed between the defendant's alcohol dependency and his violation of General Statutes § 14-215 (c) constitutes plain error. The state contends that the defendant was not charged with any violation pertaining to the use of alcohol, and that no evidence exists that he was under its influence at the time of his arrest. Moreover, the state asserts that § 9 (b) requires that "the defendant clearly must show that his dependency contributed to his commission of the offense." In essence, then, the state argues that absent a showing of some form of causation, a court may not find a relationship between a defendant's alcohol dependency and the crime committed. We disagree.

In its articulation, the court stated the basis on which it determined that a relationship existed between the defendant's alcohol dependency and his violation of General Statutes § 14-215 (c). The court found that at the time the defendant was arrested he was on probation for operating a motor vehicle while under the influence of intoxicating liquor, an alcohol related offense. Thereafter, he was admitted to Berkshire Woods and treated until August, 1990, during which time he was alcohol dependent. The court also stated that it relied on Hodge's testimony and considered the defendant's history of alcohol abuse.

Since the gravamen of the state's claim centers on an interpretation of the term "relationship," we commence our analysis with settled principles of statutory construction designed to ascertain and give effect to the apparent intent of the legislature. *Rose* v. *Freedom of Information Commission,* 221 Conn. 217, 225, 602 A.2d 1019 (1992); *United Illuminating Co.* v. *Groppo,* supra, 755. It is axiomatic that when a statute's words are plain and unambiguous, we look no further for interpretive guidance because we assume the words themselves express the legislature's intent. *Norwich* v. *Housing Authority,* 216 Conn. 112, 117–18, 579 A.2d 50 (1990). "That axiom only applies in full force, however, [w]here . . . the language of a statute is . . . *absolutely* clear on its face and where no ambiguity is raised in applying the statute in a particular case." (Emphasis in original; internal quotation marks omitted.) *Rose* v. *Freedom of Information Commission,* supra, quoting *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission,* supra, 692.

By contrast, when we are confronted with ambiguity in a statute, " 'we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was

designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter.' " *United Illuminating Co.* v. *Groppo,* supra, 756, quoting *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 589, 522 A.2d 771 (1987); *Rose* v. *Freedom of Information Commission,* supra. We also look to "the mischief it was designed to remedy . . . to determine what purposes the legislature sought to achieve." *Turner* v. *Turner,* 219 Conn. 703, 713, 595 A.2d 297 (1991).

We conclude that the legislature's use of the term "relationship" is not absolutely clear but susceptible to different interpretations. The wording of § 9 (b) contains no definition or modifying language that clarifies the use of the term "relationship." It merely states that there must be "a relationship between the dependency and the crime" committed. Because ambiguity exists, we turn to the Act's legislative history. *United Illuminating Co.* v. *Groppo,* supra, 755.

Our review of this history discloses that Senator Avallone, one of the bill's sponsors, stated on the floor of the Senate: "That's the first thing you have to determine, not that they're a use[r], or that they were under the influence of alcohol at the time. You must establish, and the bill sets forth how one establishes drug dependency, before one can become eligible." 32 S. Proc., Pt. 11, 1989 Sess., p. 3661. Although statements made on the floor of the legislature are not controlling, as we have noted; *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission,* supra, 695; statements by a bill's sponsor are entitled to particular weight and careful consideration in discerning legislative intent. *United Illuminating Co.* v. *Groppo,* supra, 760 n.14; see generally 2A J. Sutherland, Statutory Construction (1992) §§ 48.14, 48.15. We therefore conclude that the legislature did not require a showing of

a contributory or causal link between the defendant's drug or alcohol dependency and the crime committed.

This conclusion finds support in the language of § 9 (b). Its specific statement that there need be only a "relationship" between the dependency and the crime committed "connotes the legislative intent to exclude that which is not specifically stated." (Internal quotation marks omitted.) *Stuart* v. *Department of Correction*, 221 Conn. 41, 44, 601 A.2d 539 (1992), quoting *State* v. *Kish*, 186 Conn. 757, 765, 443 A.2d 1274 (1982); *State* v. *Waterman*, 7 Conn. App. 326, 337, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986); see generally 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 47.23. "It is not for this court to impose obligations not intended by the legislature." (Internal quotation marks omitted.) *Winslow* v. *Lewis-Shepard, Inc.*, 216 Conn. 533, 540, 582 A.2d 1174 (1990), quoting *Doe* v. *Institute of Living, Inc.*, 175 Conn. 49, 65, 392 A.2d 491 (1978). If the legislature had intended to require that a defendant's condition in some way contribute to or cause the crime committed, "it certainly was aware of the explicit language with which it could do so"; *Roto-Rooter Services Co.* v. *Department of Labor*, 219 Conn. 520, 527, 593 A.2d 1386 (1991); and "it could have explicitly so provided." *Lees* v. *Middlesex Ins. Co.*, 219 Conn. 644, 652, 594 A.2d 952 (1991). Courts ordinarily decline to read into statutes provisions that are not clearly stated. Id.; *Local 218 Steam Fitters Welfare Fund* v. *Cobra Pipe Supply & Coil Co.*, 207 Conn. 639, 645, 541 A.2d 869 (1988). Accordingly, we decline to read additional obligations into the terms of § 9 (b) merely because the state in its wisdom deems that a defendant's alcoholism must somehow contribute to or cause the crime committed before a court can order treatment. See *Winslow* v. *Lewis-Shepard, Inc.*, supra.

Finally, our conclusion is further buttressed by our Supreme Court's mandate that statutes be interpreted in accordance with the policy they seek to serve. *Chrysler Corporation* v. *Maiocco,* 209 Conn. 579, 592, 552 A.2d 1207 (1989); *Nichols* v. *Warren,* 209 Conn. 191, 203–204, 550 A.2d 309 (1988); see 2A J. Sutherland, Statutory Construction (1992) §§ 56.01, 56.02. When statutes are remedial in nature, as the state concedes General Statutes §§ 17a-648 through 17a-658 are, they "are to be liberally construed in favor of those whom the legislature intended to benefit." (Internal quotation marks omitted.) *State* v. *Anderson,* 220 Conn. 400, 404, 599 A.2d 738 (1991); see also *Barrett Builders* v. *Miller,* 215 Conn. 316, 323, 576 A.2d 455 (1990). By refusing to qualify the statute's use of the word "relationship," the trial court gave effect to both the remedial nature of the statutes and the legislature's policy of combating substance abuse by offering treatment to those accused of a broad range of less serious crimes. We conclude that the court correctly determined under § 9 (b) that the defendant's alcohol dependency was related to his violation of § 14-215 (c).

## III

### AWARD OF CREDIT FOR TIME SPENT IN TREATMENT

The state's third claim is that the trial court improperly granted the defendant thirty days credit toward his prison sentence. The state argues that the credit renders the sentence unlawful because it contravenes the mandate of General Statutes § 14-215 (c) that requires a minimum of thirty consecutive days incarceration. We agree.

The court sentenced the defendant to a six month prison term, execution suspended after thirty days for the violation of General Statutes § 14-215 (c). Over the state's objections, the court then granted thirty days credit for the time spent in Berkshire Woods. The court

did not issue a mittimus committing the defendant to the custody of the correction commissioner for the mandatory thirty day period.

Before reaching the state's claim, we must first address the defendant's assertion that this issue is not properly before us. The defendant argues that review is improper because the state failed to move in the trial court for correction of the defendant's sentence. We disagree with the defendant's contention. "Both the trial court and this court, on appeal, have the power, at any time, to correct a sentence that is illegal." *State v. Daniels,* 207 Conn. 374, 387, 542 A.2d 306 (1988); Practice Book § 935. Therefore, this claim is properly before us.

General Statutes § 14-215 (c) carries a mandatory minimum penalty of thirty consecutive days imprisonment, "which may not be suspended or reduced in any manner." Section 9 (g)[8] of the Act states that "[t]he provisions of this section shall not be construed to limit the application of any provision of the general statutes requiring mandatory minimum sentences and prohibiting probation for certain offenses." Because the credit effectively rendered the defendant's sentence a nullity, he did not serve the mandatory thirty consecutive days required by § 14-215 (c). See *Plourde v. Liburdi,* 207 Conn. 412, 418, 540 A.2d 1054 (1988) (the phrase "may not be suspended or reduced in any manner" in § 14-227a precludes the granting of sentence credits to those convicted of a third violation of the statute); *State v. Darden,* 171 Conn. 677, 680, 372 A.2d 99 (1976) (legislature may impose mandatory minimum sentences and preclude probation or suspension of sentence). We therefore conclude that the court improperly granted the defendant thirty days credit against his sentence in violation of § 9 (g) of the Act.

[8] See footnote 3, supra.

## IV

### SENTENCING FOR VIOLATION OF PROBATION

The state's final claim is that the trial court improperly sentenced the defendant for violating his probation. The state argues that the court imposed an unlawful sentence when it vacated the original judgment on the probation violation and imposed a new term that is six months longer than that imposed by the original sentencing court. We agree.

We note at the outset that although the state has withdrawn this claim, we nevertheless review it under the plain error doctrine[9] because "failure to rectify such an evident oversight may undermine public confidence in the judicial proceedings." (Internal quotation marks omitted.) *Ralto Developers, Inc.* v. *Environmental Impact Commission,* 220 Conn. 54, 60, 594 A.2d 981 (1991), quoting *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985). Reversal for plain error is generally reserved for truly extraordinary situations such as this, "where the existence of the error is . . . obvious"; (internal quotation marks omitted); *Goral* v. *Kenney,* 26 Conn. App. 231, 236, 600 A.2d 1031 (1991), quoting *State* v. *Hinckley,* supra; and results in an unreliable verdict or miscarriage of justice. *State* v. *Polanco,* 26 Conn. App. 33, 39, 597 A.2d 830, cert. denied, 220 Conn. 926, 598 A.2d 367 (1991). A trial court commits plain error when it fails "to apply a clearly relevant statute to the case before it." (Internal quotation marks omitted.) *Ralto Developers, Inc.* v. *Environmental Impact Commission,* supra, 59, quoting *State* v. *Hinckley,* supra, 88.

---

[9] Practice Book § 4185 provides in pertinent part: "The [appellate] court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The [appellate] court may in the interests of justice notice plain error not brought to the attention of the trial court."

In this case, General Statutes § 53a-32 (b) provides that once a probation violation is established, "the court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence." Because the statute does not authorize an increase in a defendant's probation, the court failed to abide by the statute and thus imposed an illegal sentence. We conclude that the court's sentence constitutes plain error and therefore vacate it.

In summary, we conclude that the trial court's determination that the defendant is eligible for alcoholism treatment is proper, as are its factual findings pursuant to Public Acts 1989, No. 89-390. We also conclude that both the judgment granting the defendant thirty days credit toward completion of his sentence, and the judgment imposing sentence for the probation violation are improper and should be vacated, and that the defendant should be allowed to withdraw his pleas. At that time, the defendant may plead not guilty and proceed to trial. Should he plead guilty, the court is to impose at least the mandatory minimum sentence required by General Statutes § 14-215 (c). The court may then exercise its discretion as to whether to afford the defendant the opportunity for further treatment.

The judgments are reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.